## Court of Appeals.

### PEOPLE v. RUGG.

*March*, 1885.

GRAND JURIES IN COURTS OF SESSIONS, HOW ORGANIZED.—CODE
CRIM. PROC. §§ 45, 46, 225–227.—PLEADING IN DIF-
FERENT COUNTS.—CODE CRIM. PROC. §§ 273 AND
275—FORM OF VERDICT.—CODE CRIM. PROC.
§§ 436, 437.—PENAL CODE, § 10.

Section 45 of the Code of Criminal Procedure is a distinct enactment,
under which grand juries may be drawn and summoned for courts
of Sessions in the different counties of the state, except New York
county and an indictment found in the court of Sessions of Queens
county is valid where the grand jury is organized in accordance
with the provisions of said section,—viz., where it is held in pursu-
ance of an order of the county judge designating the times when
courts of Sessions will be held at the place where county courts are
held, etc., and designating the terms at which a grand or petit jury,
or both, or neither, is required to attend, which order has been pub-
lished in a newspaper printed in the county, for four successive
weeks previous to the time of holding the first term under said order.
The provisions of sections 225, 226 and 227 of the Code of Criminal
Procedure, are in harmony with sections 45 and 46, and all of said
sections, taken together, constitute a complete system by which grand
juries may be drawn and summoned to meet exigencies under all
circumstances.
Section 225 makes no provision for drawing grand juries for courts of
Sessions in any county except New York and Kings, and applies
only to the counties therein referred to, grand juries for courts of
Sessions of other counties being provided for by sections 45 and 46.
Section 226, subd. 1,—providing that a grand jury may be drawn for every
other court of Sessions than is named in section 225, when specially
ordered by the court, or board of supervisors,—is intended to provide
for the drawing of a grand jury when no designation has been made
by the county judge under section 45, or where special circumstances
exist which require that a grand jury be drawn and summoned inde-
pendent of those which are provided for by the sections cited; and
the power there conferred is discretionary, to be exercised as cir-
cumstances may demand.

Section 227,—providing that when made by the court, or a judge thereof, or by the board of supervisors, the order for a grand jury must be filed with the county clerk, etc.,—does not apply to an order of designation made by the county judge under section 45, and such designation need not be filed in the county clerk's office.

The indictment in this case contained four different counts, charging the commission of the offense,—viz., murder in the first degree,—in somewhat different forms, varying the circumstances under which the crime was alleged to have been committed. There was no direct proof by an eye-witness, of the commission of the offense charged, and it was connected with the commission of other crimes. *Held,* that in view of the circumstances connected with the crime, the indictment did not violate the rules of pleading contained in sections 273 and 275 of the Code of Criminal Procedure; that it was not open to the objection that it charged more than one crime; and that it could not be said that each of the counts charged the crime to have been committed in precisely the same manner and by precisely the same means.

Section 10 of the Penal Code,—providing that "whenever a crime is distinguished into degrees, the jury, if they convict the prisoner, must find the degree of the crime of which he is guilty,"—must be construed with the qualifications and restrictions contained in sections 436 and 437 of the Code of Criminal Procedure, and where the indictment charges the degree of the crime, and the verdict is the general one "guilty," it is not essential that such degree should be specified in the verdict. This is especially so, where the jury have been charged that if they find the defendant guilty of any other degree than that charged in the indictment,—viz., murder in the first degree,—they should so state in their verdict.

The question of waiver of right to object to general verdict, considered by the court.

A claim that the trial court omitted to admonish the jurors as required by section 415 of the Code of Criminal Procedure, cannot be considered on appeal where there is no part of the record showing distinctly that this was not done, and no question appears to have been raised, or exception taken in regard to the matter.*

APPEAL by the defendant, Charles H. Rugg, from a judgment of the General Term of the Supreme court in the second department, December 9, 1884, affirming a judgment of the

---

* An inadvertent omission to give the prescribed admonition, which is not shown to have worked injury to defendant, is not ground for granting a new trial. People *v.* Draper, 1 *N. Y. Crim. Rep.* 138. As to presumption of regularity, see People *v.* O'Loughlin, *ante*, p. 120.

court of Oyer and Terminer of Queens county, Hon. CHAS. F.
BROWN presiding, April 17, 1884, convicting the defendant of
murder in the first degree.

Defendant was indicted March 7, 1884, for the murder of
Ann E. Maybee, alleged to have been committed November
17, 1883.   The indictment, which was found in the court of
Sessions, was ordered to be tried at Oyer and Terminer.
It contained four counts.   The first count charged the kill-
ing of Ann E. Maybee by defendant to have been willful,
deliberate and premeditated.   The second count charged the
killing of Ann E. Maybee to have been committed by defend-
ant while in the commission of a felony ; to wit, the murder of
Lydia Maybee.   The third count charged the killing of Ann
E. Maybee to have been committed by defendant while in the
commission of a felony ; to wit, grand larceny in the taking of
certain described articles, the property of Lydia Maybee.   The
fourth count charged the killing of Ann E. Maybee to have
been committed by defendant in the commission of a felony ;
to wit, grand larceny, in the taking of money, the property of
Garrett Maybee.

The evidence given upon the trial showed that about 4.30
P. M., November 17, 1883, near Oyster Bay, Queens county,
Lydia Maybee, the mother of Ann E. Maybee, the person for
whose murder defendant was indicted, went from the house to
the barn to do some ·work.   The daughter soon afterwards
followed her, leaving none in the house but Garrett Maybee, her
father, who was blind, feeble and partially paralyzed.   Shortly
afterwards a stranger entered the house, and was heard by
the blind man to go up stairs into the room where Lydia May-
bee and himself usually slept.   Garrett Maybee, who was in
the room immediately under the sleeping-room, getting no
satisfactory answer to his questions, cried out in alarm, and
the stranger immediately came down stairs, beat him about
the head with a cane, and demanded his watch.   Garrett
Maybee soon after alarmed the neighbors, and when these
went to the barn, they found there, covered with leaves, the
dead bodies of mother and daughter, Lydia and Ann E. May-
bee, who had been strangled.   A search in the house showed

that a watch and chain and cameo pin, the property of Lydia Maybee, worth about $30, and $90 in bank bills, the property of Garrett Maybee, had been taken. Suspicion having been directed to Charles H. Rugg he was arrested and confessed the murder. The admissibility of this confession was contested on the trial.

Evidence, almost conclusive, but not necessary here to be given, showed that he was guilty, and that he must have committed two murders, two larcenies, and an assault, within the space of a few minutes.

The questions raised by this appeal are fully set forth in the opinion.

*John F. Quarles* and *Richard Busteed*, of counsel, for defendant and appellant.

*John Fleming*, district attorney, for the people, respondent.

MILLER, J.—The defendant was indicted for murder in the first degree, in killing one Ann E. Maybee, in the town of Oyster Bay, Queens county, on November 17, 1883, and was tried and convicted of the offense in the court of Oyer and Terminer, held in said county, on April 14, 1884.

The jury rendered a general verdict of " guilty," without designating the degree of the crime.

Various questions were raised upon the trial, and are now presented on this appeal, and, so far as they affect the legality of the proceedings and the conviction of the defendant, will receive due consideration.

The first question presented upon the argument relates to the organization of the grand jury which found the bill of indictment against the defendant, and it is insisted that the court erred in refusing to set aside the indictment on the ground that it was not found by a legally organized grand jury. This question was raised by a motion to quash the indictment, which was based upon the affidavit of the defendant's attorney, wherein he sets forth that he had made diligent search in the clerk's office of Queens county, for a copy of the order of the

court or Board of Supervisors, summoning the grand jury for
the term of the court of Sessions at which the alleged indict-
ment against the defendant was found, which should have been
filed as required by statute, and that there was no record of
any order of the court or Board of Supervisors, summoning a
grand jury for the said term, and that the summoning and
impaneling of the said alleged grand jury was irregular and
without warrant of law.   In opposition to this affidavit, the
record from the county clerk's office was produced, showing
the appointment by the county judge of Queens county of the
times and place of holding terms of the County court and
court of Sessions, and designating those terms at which a
grand jury should be summoned, as required by law, among
which was the one at which the indictment against the defend-
ant was found ; also proof of the publication of the notice for
the holding of courts in the county of Queens, as before men-
tioned, in accordance with the statute.

The claim of the defendant's counsel is that section 45 of
the Code of Criminal Procedure, under which the notice and
publication referred to were made, has no relation to the form-
ation of grand juries, and that the main object of that section
is to provide for the holding of courts of Sessions in counties
other than New York and Kings, and that the provision in it
respecting grand and petit juries is only an incident.   The
point urged is that the grand jury by which the defendant
was indicted, was not directed to be summoned by the court or
Board of Supervisors, in pursuance of sections 225 and 226 of
the Code of Criminal Procedure, and that they were drawn in
violation of section 227 of said Code, and therefore no author-
ity existed for the drawing of the grand jury in question.
The question presented requires the examination of the various
sections of the Code referred to, and any other that bears
upon the subject.   By section 45 it is declared : " A court of
Sessions must be held at such times as the county judge of the
county, by order, designates, and at the place where the county
courts are held for trial of issues of fact by a jury.   Such
order must designate the terms at which a grand or petit
jury, or both, or neither, is required to attend ; and neither a
grand jury nor a petit jury is required to be drawn, or sum-

moned to attend a term thus designated to be held without a jury. The order must be published in a newspaper printed in the county, for four successive weeks previous to the time of holding the first term under such order." This section is a part of chapter 2, title 5, part 1, of the Code of Criminal Procedure, which relates to courts of Sessions in counties other than New York and Kings. Under this section, as we have seen, an order was made designating the times when, and place at which courts of Sessions in said county should be held, and the terms when a grand jury would be required to be summoned; and due notice was given of the same as the law required. By section 46, provision is made for the drawing and summoning of a grand jury where the county judge omits to designate the terms in accordance with section 45, and in case of such neglect, grand juries are to be drawn and summoned for each of the terms mentioned in the order provided in section 45.

It is quite manifest, we think, that the grand jury which found the bill of indictment against the defendant, was lawfully drawn and summoned in pursuance of section 45, above cited. As the terms were named, in the order of the county judge, at which grand juries were to be drawn and summoned, the provisions of section 46 have no application.

A lawful grand jury having been drawn and summoned, and the indictment in question found by them in accordance with the provisions cited, such indictment must be held to be valid, unless it is made to appear that the proceeding was in conflict with the other provisions of the Code of Criminal Procedure already referred to. Such, we think, was not the case, and the provisions of the Code relied on by the defendant are in entire harmony with sections 45 and 46 (*supra*), and constitute a part of a system by which grand juries may be drawn and summoned to meet exigencies under all circumstances, as will be seen by an examination of these provisions. Section 225 declares that grand juries must be drawn for courts of Oyer and Terminer, except in the city and county of New York, and the county of Kings, and except for extraordinary or adjourned terms; for the court of General Sessions of the city and county of New York, and the court of Sessions of the

county of Kings; and the City Courts whenever an indictment can be there found. It will be observed that no provision is made in this section for the drawing of grand juries for courts of Sessions in any county except in New York and Kings, and it has no application to any county in the state except to those named. As we have seen, grand juries for the courts of Sessions of such other counties are expressly provided for by sections 45 and 46, already cited.

Section 226 provides that a grand jury may be drawn for every other court of Sessions (not named in the preceding section) when specially ordered by the court or by the Board of Supervisors. This section was intended to provide for the drawing of a grand jury when no designation had been made by the county judge in pursuance of the provision of section 45, or where special circumstances existed which required that a grand jury be drawn and summoned independent of those which were provided for by the sections of the Code already cited. There is no absolute requirement that a grand jury must be drawn, but merely a declaration that it may be, thus leaving it a matter of discretion to be exercised as circumstances might demand.

Section 227 is as follows: "If made by the court or a judge thereof, the order for a grand jury must be entered upon its minutes, and a copy thereof filed with the county clerk at least twenty days before the term for which the jury is ordered. If made by the Board of Supervisors, a copy thereof, certified by the clerk of the board, must be filed with the county clerk at least twenty days before the term; and when so filed is conclusive evidence of the authority for drawing the jury." The difference between the cases last provided for and that contained in section 45, is very apparent. In section 45, the publication of the order must be for four weeks before the holding of the first term under the order, while in section 227 it is to be filed in the county clerk's office at least twenty days before the term. These various provisions are not inconsistent, but essential to complete a system by means of which grand juries may be drawn and summoned as occasion may require.

The designation of the county judge of the terms of court

at which courts of Sessions shall be held, is an order of that officer made in pursuance of the statute, which alone authorizes the holding of such courts, and it specially designates those courts at which grand and petit juries shall attend, and a direction and notice to the county clerk to draw said jurors and to the proper officer to summon them to attend. This is manifest from the provision contained in the same section (45), that "neither a grand nor a petit jury is required to be drawn, or summoned to attend a term thus designated to be held without a jury." There is no ground for claiming that the order is not effective because section 45 does not require that it should be filed in the office of the county clerk, and no reason exists why the publication of the order, of itself, should not be a notice to the county clerk, as it is to other persons, of the holding of the courts therein mentioned.

It is the duty of the county clerk to take notice of the holding of courts required by law ; to give the proper notice of the drawing of the panel of jurors; and, in connection with the proper officers whom the law designates, to draw the same. *Code Civ. Pro.* §§ 1042, 1043, 1044. When this duty is performed, the panel is perfect and complete, and a grand jury thus drawn constitutes a body duly authorized to find bills of indictment.

As there is a distinct enactment by section 45 (*supra*), under which grand juries may be drawn and summoned for courts of Sessions in the different counties of the state generally, and as the grand jury which indicted the defendant was organized in accordance with these provisions, there is no ground for claiming that it was illegally organized and had no authority to find the indictment in question.

Upon the trial, the defendant interposed a demurrer to the indictment against him, upon various grounds which the court overruled, and the defendant excepted to the decision.

It is urged that this was erroneous for the reasons which will presently be considered.

It is said that the indictment was drawn in defiance of sections 273 and 275 of the Code of Criminal Procedure.

By section 273, all forms of pleading in criminal actions, heretofore existing, are abolished, and the forms provided by

the Code substituted in their place. Section 275 provides for
the form of the indictment, and declares what it shall contain,
and among other things, a plain and concise statement of the
act constituting the crime, without unnecessary repetition.
The claim that the provisions of this section have been violated
cannot, we think, be upheld, nor can it be said that the phrase-
ology employed in the indictment is so uncertain and difficult
as not to be comprehended upon a perusal of the same, or that
it does not intelligibly and fairly present, in language suffi-
ciently plain and concise, the real character of the offense in-
tended to be charged against the defendant. We are unable
to perceive any such deviation from the rule prescribed by the
statute as would justify the conclusion that the indictment is
demurrable on that account. The indictment contains four
different counts, charging the commission of the offense in
somewhat different forms. While to some extent it follows
the old form prior to the enactment of the Code of Criminal
Procedure, it cannot be said that it contains useless and un-
necessary words which violate its provisions. In view of the
circumstances connected with the crime with which defendant
was charged, it contained a plain and concise statement of the
crime alleged, within the spirit and meaning of the Criminal
Code. It is not pointed out to us, nor are we able to discover
any language in the indictment which evinces a disregard of
the provisions of the Code, or a deviation from the principle
intended to be established thereby. Nor is there any ground
for the claim that the indictment charges more than one crime.
Although it contains different counts, it merely states the com-
mission of the same offense in different forms, so as to meet the
evidence which might be presented upon the trial. As there
was no direct proof, by an eye-witness, of the commission of
the offense charged, and as it was connected with the commis-
sion of other crimes, it was entirely competent for the pleader
to allege in different counts such facts as might by possibility
be presented upon the trial, and as the proof as to these could
not be anticipated with exactness, such allegations were proper
and within the provisions of the Criminal Code. There is
nothing in these provisions which compels the pleader to con-
fine the indictment to a single statement of the facts where the

proof is uncertain. The object of the pleading is to inform the defendant of the crime alleged against him ; and when this is done, without needless repetition, it cannot be urged that he has not been fully advised of the character of the crime for which he is indicted.

Nor can it be said that each of the counts charges the crime to have been committed in precisely the same manner, and by precisely the same means. On the contrary, the indictment contains allegations in each of the counts, showing a somewhat different state of facts, and varying the circumstances under which the crime is alleged to have been committed. This is in strict accordance with the provisions of the Code of Criminal Procedure, and furnishes no ground for a demurrer, and there was no error committed by the judge in overruling the same.

The trial judge did not err in receiving the general verdict of guilty. The indictment contained four counts, each of which charged the commission of the crime of murder in the first degree ; and the judge in charging the jury stated to them that the indictment was for murder in the first degree, and that under it they could convict the defendant of any of the degrees of murder or manslaughter which under our statute made up the general designation of the crime of homicide. At the close of his charge, the defendant's counsel asked the judge to charge that, if the jury should convict the defendant under the indictment, they must in their verdict find the degree of the crime of which he is guilty. In response to this request, the judge charged that they might find him guilty, or if they found him guilty of anything but murder in the first degree they must then specify what the crime is.

No exception was taken to this portion of the charge. The jury having retired returned into court and rendered a verdict of "guilty." Defendant's counsel then moved for a new trial, but no exception was taken to the verdict as rendered, nor does it appear that any motion was made in arrest of judgment on the ground that it was erroneous. It would thus seem that the defendant's counsel acquiesced in the submission of the case to the jury in the form in which it was presented in reference to the rendition of the verdict and to the form of the verdict as rendered, without interposing any objection whatever to the

same. Without, however, determining the question whether
the defendant's counsel waived his right to interpose an objec-
tion, upon appeal, to the verdict, we think no error was com-
mitted either in the submission to the jury or in receiving the
general verdict of guilty.

Section 10 of the Penal Code provides, " Whenever a
crime is distinguished into degrees, the jury, if they convict
the prisoner, must find the degree of the crime of which he is
guilty." This provision must be interpreted in connection with
others which have a bearing upon the subject, as will be seen
by reference to the same. By section 436 of the Code of
Criminal Procedure, " The jury may either render a general
verdict, or when they are in doubt as to the legal effect of the
facts proved, they may, except upon an indictment for libel,
find a special verdict." By section 437, " A general verdict
upon a plea of not guilty is either ' guilty' or ' not guilty ;'
which imports a conviction or acquittal of the offense charged
in the indictment. Upon a plea of a former conviction or
acquittal of the same offense, it is either ' for the people ' or
' for the defendant '." Taking these provisions together, it is
apparent that section 10 of the Penal Code must be construed
with the qualifications and restrictions contained in sections
436 and 437 (*supra*) of the Code of Criminal Procedure, and
where, as in this case, the indictment charges the degree of the
crime and the verdict is the general one " guilty," it is not
essential that such degree should be specified in the verdict.
Any other interpretation would render the provisions contained
in the two last sections cited inoperative and of no avail. The
object and intention of section 10 of the Penal Code evidently
was to guard and protect the rights of the defendant so that
the court in inflicting the punishment might be advised of the
exact nature of the crime of which he was convicted. That
object is fully accomplished where the indictment specifies the
degree of the offense charged and the verdict is a general one
of " guilty." The finding of the jury of the general verdict
of " guilty " was, under the circumstances, equivalent to and
in fact a verdict of guilty of murder in the first degree, in view
of the fact, especially, of the instruction of the court that if
they found the defendant guilty of any other degree they

should so state in their verdict. It follows that the verdict of the jury as rendered furnishes no ground for a reversal of the judgment.

There are no other questions presented in the case that require an extended discussion.

Numerous questions were raised on the trial upon the impaneling of the jury in reference to the evidence given on the examination of some of the jurors as to their qualification to act as such. After a careful examination of the various questions raised we are satisfied that within well settled rules sustained and upheld by the decisions of this court, no error was commited by the judge in any of his rulings, and that all of the jurors who were sworn were legally qualified to act as such, and we do not deem it necessary to discuss at length the objections urged in regard to this branch of the case.

The claim that the trial court failed in its duty in not admonishing the jury, as required by section 415 of the Code of Criminal Procedure, has no merit. We are not referred to any portion of the record from which it appears distinctly that this was not done. No question appears to have been made on the subject and no exception is presented which raises any such point.

We have examined the other points which have been urged upon our attention by the defendant's counsel, and we do not find that in any of the rulings upon the questions referred to, any error was committed by the judge upon the trial.

The charge against the defendant involved the murder of two persons, and was connected with a burglarious entrance into the house where they lived, and a violent assault upon a blind and infirm old man, and also a felonious taking of property and money from the premises.

The trial was conducted with entire fairness, and the defendant was defended by able counsel, and the verdict of the jury was fully sanctioned by the evidence.

A careful examination of the whole case leads to the conclusion that no error has been committed to the prejudice of the defendant.

The judgment of conviction should be affirmed and the

record remitted to the Supreme court, with directions to proceed according to law.

All concur.