# THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-ENT, v. LORENZO DIMICK, APPELLANT.

*Indictment — when sufficient — when the people will not be compelled to elect between two counts — when the insurance of a vessel, known to be lost, by a general agent of a company and his obtaining the insurance money constitute larceny — the insurance must be illegal to constitute larceny — when an error to charge as requested is not cured by a statement of the true rule elsewhere in the charge — an insurance agent is not authorized to insure a vessel known by him at the time to be lost — the liability of the agent for effecting such an insurance is not affected by his belief as to his powers — place of the commission of the offense — Code of Criminal Procedure, sec. 134 — it is error to admit the whole of a paper, parts only of which are admissible.*

The sufficiency of the indictment in this case, which consisted of three counts, considered and affirmed, it being construed as charging, in the first two counts, but one crime only, that of grand larceny, committed in a different manner or by different means, the first being intended to bring the offense within section 528 of the Penal Code and the second within section 529.

It was also held that the refusal of the court to direct the people to elect upon which count they would proceed or ask for conviction was not error.

It appeared that during the year 1883 the defendant and one Crosby were partners in the insurance business at the city of Buffalo, being general agents for the Thames and Mersey Marine Insurance Company (Limited), of England, and for the Union Insurance Company of Philadelphia, while Crosby was such agent for the Insurance Company of the State of Pennsylvania and the defendant for the Continental Insurance Company. The firm carried on the inland marine insurance business for the four companies, establishing local agencies, with the approval of and for the companies, respectively, being authorized to apportion the risks taken by any one of them by reinsurance between the companies, within certain prescribed limits as to all except the Continental, which left it wholly to the discretion of its Buffalo general agency. The commissions of the general agents of the three first-named companies were twenty-five per cent of net premiums and ten per cent of profits, that of the Continental were twenty per cent of the net premiums and fifteen per cent of the profits.

Upon the trial evidence was given, which permitted the jury to find that the defendant had reinsured in the Continental Company $7,000 of an insurance of $10,500 placed by a local agent upon a vessel in the Union Insurance Company ; that after he was advised of facts which made him believe that the vessel was lost, he canceled the reinsurance in the Continental Company, and entered a reinsurance in the Thames and Mersey Company to the amount of $5,000 ; that he then believed that the schooner was lost and that, in fact, the loss had then occurred ; that such cancellation and entry were so directed and made by him, not only for the purpose of relieving the Continental Company from the loss, but with the further view to his own advantage, and with

the intent to defraud the Thames and Mersey Company, and to consummate such purpose by causing the payment by that company of the amount so entered as reinsurance by it.

*Held*, that to constitute the crime with which the defendant was charged, it was necessary that the insurance in such company be illegal, because if the act was within the power of the firm as the general agent of the company to do it, the alleged offense could not arise out of the obtaining from the company payment of the loss, whatever may have been the motive of the defendant in so charging the company with liability.

That as the charge of the court to the jury might be treated as instructing them, that the question of the legality or illegality of such reinsurance was not important, a new trial should be granted, although subsequent portions of the charge made a conviction by the jury depend upon the finding of facts which would, if found, render such reinsurance invalid.

An entire charge may be considered, in aid of the interpretation and effect of the several parts, and an apparently erroneous sentence or phrase may ordinarily be deemed modified and relieved from such error by other portions of the charge stating the correct rule for the guidance of the jury, but when an important proposition is erroneously stated and not distinctly withdrawn, it does not necessarily follow that it may not have a prejudicial effect, although a rule complete in itself for the action of the jury is properly charged.

It was contended by the counsel for the defendant that in any view which could be taken of the evidence the insurance was legal, and liability was created by it, because the power vested in the firm by the Thames and Mersey Company was to make insurance upon "all kinds of goods, wares, merchandise and produce laden on board the good vessel or vessels, boat or boats, * * * *lost and not lost,* at and from all ports and places to ports and places," etc., and that the power to insure, after loss thereby conferred, was not dependent upon a want of knowledge that the subject of insurance was lost.

*Held*, that even if it be assumed that a contract of marine insurance, entered into after the loss of the subject of it, when both parties to the contract have full knowledge of the situation, may be effectual as such, it is quite evident that no agency, however general in its terms, would be deemed to embrace the power to insure property after and with knowledge of its loss.

The presumption is that power is vested in agents for the promotion and protection of the interests of the principal and not for its destruction, and that the power vested in them is for purposes only which may be deemed legitimate in the business of the employment.

An exception was taken to the refusal of the court to charge that if the jury found that the cargo of the vessel was reinsured in the Thames and Mersey after the defendant had notice of the loss of the cargo, believing that he had the right to make such reinsurance, no crime was committed by him.

*Held*, no error; that the belief of the defendant that he had the right was not inconsistent with the intent to defraud the company and would not protect him against the charge.

The draft or order for the amount of the loss was drawn in Buffalo by the

defendant, in the name of the firm, upon the general manager of the Thames and Mersey Company, who resided in New York city, and sent to him there, where it was by him accepted and a check drawn upon a bank in New York to pay it, which, or the proceeds thereof, were sent to the firm at Buffalo, and there received by the defendant for his firm and deposited in a bank in that city to the credit of the defendant, as general agent, in whose name the bank account of the firm was kept, and the amount thereof was credited to the company in the ledger kept at the office. The indictment having been found in the Superior Court of Buffalo, a court of local jurisdiction, it was contended that as the crime was committed in the city of New York that court had no jurisdiction over it.

*Held,* that although the obtaining of the money was the consummation of the offense, yet as the false representations and draft which produced the apparent liability of the company, which were the essential elements of it, were made at Buffalo, the offense was there committed.

That although the fact that the company was induced to, and did, in the city of New York, part with its money by reason of the effect upon it there produced by these representations, or by the draft, might give the court of that city jurisdiction over the offense, under section 134 of the Code of Criminal Procedure, yet it did not deprive the Superior Court of Buffalo of its jurisdiction over it.

Upon the trial the complaint in a civil action by the company against the defendant, purporting to be verified by the general manager of the company, was received in evidence upon the general manager testifying that he had sworn to some of the complaints in the civil actions referred to, and that he had sworn to certain things particularly mentioned in reference to the vessel, its loss and the time of its loss, and in reference to the risk taken upon her and the reinsurance.

*Held,* that it was error to receive the whole paper in evidence when offered by the people, as only such parts of it were admissible as were referred to in the witnesses' cross-examination.

APPEAL by the defendant from a judgment of the Erie Oyer and Terminer, convicting him of the crime of grand larceny in the first degree and sentencing him to five years' imprisonment.

The indictment contains three counts and charges: 1. That on the 10th day of December, 1883, at the city of Buffalo, the defendant did feloniously, falsely and fraudulently represent to the Thames and Mersey Marine Insurance Company (Limited), of Liverpool, London and Manchester, England, that it had made and effected, through its general agents, Crosby & Dimick, insurance upon the cargo of the schooner James Wade in the sum of $5,000; that a loss on the cargo had thereafter occurred, whereby the liability of the company had become fixed to that amount; that the company, believing the false representations so made to be true, and relying

upon them, was thereby induced to and did pay over to the defendant, and he feloniously and fraudulently obtained from the possession of the company $4,975 in money, of a kind and description to the grand jury unknown; that in truth and in fact the company had not theretofore made and effected any such insurance, and that it had not become liable to pay any such loss, etc.

2. That on the 10th day of December, 1883, the defendant, at the city of Buffalo, feloniously and willfully, with intent to defraud the Thames and Mersey Marine Insurance Company (Limited), did draw upon Angus J. McDonald, the general agent of the company, and duly authorized to pay the same from its money, in case the drawer was entitled to draw upon McDonald as such general agent for the payment of the same, a draft in the name of Crosby & Dimick, general insurance agents, etc., for $4,975, payable to their order as such agents, when in truth and in fact the defendant was not, nor was his firm of Crosby & Dimick, lawfully entitled to draw on the drawee for such sum, as the defendant well knew, and that he did willfully, feloniously and unlawfully, and with intent to defraud the company, by color and aid of such draft, obtain from it such sum in money, etc.

3. That on the 10th day of December, 1883, at the city of Buffalo, the defendant feloniously, and with intent to deprive and defraud the Thames and Mersey Marine Insurance Company of its property, and appropriate this sum to his own use, etc., did secrete, withhold, take, steal and carry away from its possession and appropriate to his own use, etc., $4,975 of the money and personal property of the company.

The demurrer to the indictment was overruled, and the defendant pleaded not guilty. And on the trial it appeared that during the year 1883 the defendant and Thomas G. Crosby were partners in the insurance business at the city of Buffalo; that they were general agents for inland marine insurance for the Thames and Mersey Marine Insurance Company (Limited), of England, and the Union Insurance Company, of Philadelphia; that Crosby was such agent of the Insurance Company of the State of Pennsylvania, and the defendant was such agent of the Continental Insurance Company, of New York. The firm carried on the business of the agency of these four companies. This business was wholly that of inland

marine insurance. The firm established local agencies with the approval of and for the companies respectively, and had the power to apportion risks taken by any one of them, by reinsurance between the companies, within certain prescribed limits, as to all except the Continental, which left it wholly to the discretion of its Buffalo general agency.

The commissions of these general agents in the business of the three first-named companies were twenty-five per cent of net premiums and ten per cent of profits, and in that of the Continental twenty per cent of net premiums and fifteen per cent of the profits. The evidence tended to show that on October 24, 1883, the local agent at Detroit of the Union Insurance Company, insured in that company a cargo of wheat, on the schooner James Wade, consigned to Buffalo, for $10,500, and reported it to the defendant's firm, who reinsured $7,000 of the amount in the Continental. This was done in the usual manner by entry upon such report and in the register kept for such purposes in the office of the firm. This vessel and cargo never reached Buffalo, but sunk and were lost in the lake. And on the sixteenth or seventeenth November the reinsurance in the Continental was erased and $5,000 was entered as reinsured in the Thames and Mersey. The proofs of loss were afterwards furnished to the Union Company, and it paid the loss through the defendant's firm, and the firm thereupon drew upon McDonald, the general manager in New York city of the Thames and Mersey, for $4,975, the amount so entered as reinsurance by it, less the discount allowed for early payment. This draft was accepted and paid by him December 17, 1883. The charge in the indictment is founded on the alleged fact that the defendant illegally caused such entry of reinsurance after he was advised of the loss of the schooner, and obtained such amount of money from McDonald with the intent to defraud the company.

*Spencer Clinton*, for the appellant

*Edward W. Hatch*, district attorney, for the respondent.

BRADLEY, J. :

The grounds taken by the demurrer, and the objections urged here to the indictment, are : 1. That it does not contain a plain and

concise statement of the act constituting the alleged crime. 2. That more than one crime is charged in it ; and 3. That the facts stated do not constitute a crime. The indictment seems to contain the statutory elements requisite to bring the offense within that of grand larceny. (Penal Code, §§ 528, 529.) And for the purposes of this question it is enough that any one of the counts is sufficient. (*People* v. *Davis,* 56 N.Y., 95 ; *People* v. *Willett,* 4 Eastern R., 897 ; S. C., 102 N. Y., 251.)

We think each of the three counts contains a statement of the crime of larceny as defined by statute, and that for the purposes of pleading the statement is sufficient within the meaning of the statute upon the subject. (Code Crim. Pro., §§ 275, 276, and see Id., §§ 283, 284, 285.) And the indictment may be construed as charging one crime only. The statute orovides that it " may be charged in separate counts to have been committed in a different manner or by different means." (Id., § 279.) The crime charged in the several counts is larceny alleged to have been committed on the same day, and the property alleged to have been obtained, taken and stolen, is described as the moneys of the Thames and Mersey Insurance Company (Limited), amounting to and of the value of $4,975.

The statements in the first and second counts are of the crime committed in a different manner or by different means. The first is intended to be within the Penal Code (§ 528) and the second within Penal Code (§ 529). It is unnecessary here to determine whether the third count would support a conviction on the facts which the prosecution claim were established by the evidence. And the refusal of the court to direct the people to elect upon which count they would proceed or ask for conviction was not error. (*Armstrong* v. *People,* 70 N. Y., 38; *Hawker* v. *People,* 75 id., 487 ; Code Crim. Pro., § 279.)

We have carefully examined and considered the able argument of the counsel for the defendant on the sufficiency of the indictment, and the authorities cited by him, and think his contention on that subject is not supported in any substantial respect as applied to this case. It is sufficient to bring the charge within the statute to allege such facts as it requires to constitute the offense. (*Phelps* v. *People,* 72 N. Y., 334.) And the statement of the act constituting the crime

should be plain and concise without unnecessary repetition.' This pleading is a substantial compliance with the statute, and it is not necessary to inquire whether or not it might have been improved in manner of statement. (*People* v. *Conroy*, 97 N. Y., 63; *People* v. *Rugg*, 98 id., 537.) There is no difficulty in finding, alleged in the indictment, a statement of facts sufficient in form and substance to support the charge of the offense and to advise the accused of the crime with which he is by it charged. The representations alleged in the first count purported to be 'of existing facts, and such as might deceive and mislead the insurance company, through its representative, and induce him to part with its money to discharge the represented liability. And the description in the first and second counts of the subject of the larceny, as "money of a kind and description to the grand jury unknown," etc., was sufficient, in view of the allegation that a more particular description could not then be given. (*Haskins* v. *People*, 16 N. Y., 344.) It is not deemed necessary to consider the question of the sufficiency of the description of the property in the third count.

Upon the merits, the evidence in some material respects is conflicting and inconclusive. And it is contended on the part of the defense that as a whole it is insufficient to authorize or support the conviction. The defendant was one of the firm of Crosby & Dimick. They as such firm, during the year 1883, had charge of and performed the business of general agents of inland marine insurance for four companies — the Thames and Mersey Marine Insurance Company (Limited), the Union Insurance Company, the Insurance Company of the State of Pennsylvania, and the Continental Insurance Company. The office of the firm was at Buffalo. Local agencies for the respective companies were established at the leading ports on the lakes by the firm, with the approval of the companies. And to such local agents open policies were issued under which they acted in taking risks.

The system for the transaction of the business was such that the local agents daily reported the risks accepted by them to Crosby & Dimick, and they to their principals in which the insurances were taken. The firm was vested with the power of distribution of the risks between the companies by reinsurance to such extent as by them deemed advisable, subject to certain limitation as to amount,

applicable to all the companies except the Continental, which had prescribed no limit. The local agents had no power to reinsure.

On the 24th of October, 1883, the local agent at Detroit, of the Union Insurance Company, accepted for that company insurance of $10,500 upon a cargo of wheat on the schooner James Wade, bound for Buffalo, and forwarded a report of the risk to Crosby & Dimick, at whose office it was received and there entered in the cargo register of the Union, and in the usual manner reinsurance of $7,000 of this risk was put into the Continental. Thus was divided this risk so that the Union retained $3,500, and the Continental had $7,000 of it.

The schooner left Detroit on October twenty fifth, collided with another vessel on the same day and returned for repairs, and was repaired and sailed from Detroit November eleventh. She never reached Buffalo. In the Buffalo Commercial (a daily newspaper published in Buffalo), of date fourteenth November, appeared a statement that "the schooner James Wade, bound for this port from Detroit with a cargo of wheat, is stranded at Long Point." And in that, of date November fifteenth, appeared : "A great gale; serious loss of life and property on the lakes; some anxiety is felt for the schooner Wade, which left Chicago last Friday, as she has not been heard from." And in the Buffalo Courier (a daily newspaper published in Buffalo), of date November fifteenth, appeared : " The James Wade is sunk and badly listed just outside the point." And that of November seventeenth contained the statement: " The vessels reported missing are the schooners * * * and the James Wade, gone down with her crew. * * * Nothing was heard from the missing schooner, James Wade. Her Detroit owner, who has for several days awaited advices of her, left for home last night. Before leaving he had an interview with the officers, etc., who said that there has been enough good weather for the last two days for the Wade to have reached here if it had not sunk." And on the nineteenth November another article appeared in the Commercial to the effect that the James Wade had sunk and the crew perished. There was evidence tending to prove that through the months of October and November the Commercial was delivered at the defendant's house, and that the Courier was delivered at the office of the firm ; that on the fifteenth November the Detroit

agent received from the firm a telegraphic inquiry if the risk on the Wade was earned and when the vessel left, and by telegram of that date answered : " Schooner Wade sailed October twenty-fifth, collided with barge Genoa, returned here for repairs and sailed again November eleventh." There was evidence given, in reference to the time usually occupied by a sail vessel in going from Detroit to Buffalo, by which it appears that it is much dependent on the weather ; that if fair, the Wade would make the trip in two or three days ; that if she had to beat against winds, it might take her a week, and that if she met a gale, might have to lay to and anchor until the gale was over. And evidence was given to the effect that a sail vessel, under the most favorable circumstances, might make the trip in eighteen hours. And there was some evidence tending to prove that there was a heavy storm on the lakes the twelfth of November.

The evidence on the part of the prosecution tends to prove, that the defendant had the charge and direction of the matter of reinsurance. That the reinsurance before mentioned in the Continental was made by his direction, and that on the sixteenth day of November the defendant, by written memorandum sent to a clerk in the office, directed the latter to make a change in such insurance of the cargo of the James Wade, so that it would appear in the Union a direct insurance of $10,500, and reinsurance in the Thames and Mersey $5,000, which was done by erasing from the register the reinsurance in the Continental, thus restoring the entire risk to the Union, and then inserting reinsurance in the Thames and Mersey, $5,000. This apparently relieved the Continental from the risk and placed it upon those other two companies ; that this was done after the register was closed for the month ending the fifteenth, and necessitated a change in the footings which had been made.

This reinsurance in the Thames and Mersey was the foundation for the charge and representation of the liability of that company alleged in the indictment, and by and on account of which the company was induced to and did pay the draft, drawn by the defendant in the name of his firm upon the general manager of that company, on the 10th day of December, 1883, on account of the loss of the cargo.

The evidence justified the inference, that the schooner was lost

at the time of such reinsurance in the Thames and Mersey, although it is by no means conclusive in that respect. One, and perhaps the important, question is, whether the defendant was apprehensive, understood, or believed that the Wade was lost at the time of such reinsurance in the latter company.

There is some evidence bearing collaterally upon that question, which tends to show that this reinsurance was not reported to the company affected until after the twentieth of November, and such report not received by it until the twenty-third, whereupon McDonald, its general manager, wrote the firm asking for an explanation, and went to Buffalo, and had there an interview with the defendant on the twenty-fifth November, and was informed by him, that the delay in reporting the reinsurance was a mistake of one of the clerks charged with that duty. And the defendant then went to the clerk, stated to him that McDonald was there, etc.; that he had told him that it was a clerical error in not reporting this reinsurance earlier, and he (defendant) wanted the clerk to bear him out in such statement. The clerk then went into the office where McDonald was and made that explanation, which the clerk, as a witness on this trial, says was false, and that he was then induced by the request of the defendant to state a falsehood to McDonald.

The compensation for the services of the agency of the defendant's firm was twenty-five per cent of the premiums received, and ten per cent of the profits of the business of each of the companies, except the Continental, and for the business done for it the firm was entitled to receive twenty per cent of the premiums and fifteen per cent of the profits.

It appeared that the business of the Continental had produced a a profit, while that of the other three had resulted in large losses during the year. There is also evidence tending to prove other transactions of the defendant, or by his directions by which the Continental was relieved from loss, and its profits preserved or increased to the prejudice of the other companies by the exercise of this power of reinsurance.

There are also some other circumstances embraced in the evidence, bearing incidentally more or less on the main fact in controversy, and to which it is unnecessary specifically to refer. The force and

value of the evidence, and of the inferences legitimately derivable from it, were for the jury.

So far as it relates to the direction by the defendant of the reinsurance in the Continental, and of the subsequent change by which $5,000 of the risk was put into the Thames and Mersey, and his interview with the clerk at the time McDonald was at Buffalo, and some other matters, the evidence on the part of the people is contradicted by the testimony of witnesses on the part of the defense. It also appears that during the time of these transactions the defendant was in feeble health and remained most of the time at his house, and there is evidence to the effect that the business was then largely under the charge of another. This the prosecution claim to have met by evidence tending to prove, that so far as relates to the matters in question, he was advised of the situation, consulted, and that by him written directions in his handwriting were furnished directing to be done what was done in that respect. The question of credibility of the witnesses was for the jury, and they were by the evidence permitted to conclude, that the defendant caused and directed to be made the reinsurance and changes referred to.

The loss of the schooner Wade and cargo must be an assumed fact. The precise time when it occurred does not appear by any direct proof, but there was reasonable ground to apprehend that she was in peril, if not lost, as early as the sixteenth of November.

It cannot upon the proof be said that the defendant then actually *knew* that she had sunk in the lake, but the jury were permitted to find that the defendant was then advised, and believed, that she was either lost or in peril of becoming so, and that his purpose in causing the change to be made in the insurance of the cargo, and placing the $5,000 upon the Thames and Mersey, was to relieve the Continental at the expense of the other company, from the hazard and the consequences of the loss, which he apprehended had occurred, or was then impending and likely to occur.

And in view of the knowledge which afforded such apprehension, if the vessel was in fact then lost, the defendant might be found to be chargeable with knowledge of the fact, if the jury also found that the reinsurance in the Thames and Mersey was made in the apprehension and belief of the defendant, that the loss may have then occurred, and with the intent to defraud that company, and

and by that means to relieve the Continental from an existing liability for such loss. For when a party acts upon the assumption of a fact which he has reason to believe may exist, although he has then not actual knowledge that it does, if its then existence is established, he may be chargeable with the situation upon which he assumed to act, and with the intent and its consequences which the act may be found to import. We think the jury were permitted to take a view of the evidence which enabled them to find, that the cancellation of the reinsurance in the Continental and the entry of the reinsurance in the Thames and Mersey were made pursuant to the direction of the defendant; that he then believed the schooner was lost, and that in fact the loss had then occurred; that such cancellation and entry were so directed and made by him, not only for the purpose of relieving the Continental from the loss, but with the further view to his own advantage, and with the intent to defraud the Thames and Mersey, and to consummate such purpose by causing the payment by that company of the amount so entered as reinsurance by it.

To constitute the crime with which the defendant is charged, it was necessary that the reinsurance in such company be illegal, because if the act was within the power of the firm, as general agent of the company, to do it, the alleged offense could not arise out of the obtaining from it payment of the amount, whatever may have been the motive of the defendant in so charging the company with liability. If, therefore, the charge to the jury by the trial court may be treated as made to the effect, that the question of legality or illegality of such reinsurance was not important, it was error. The illegality and invalidity of such reinsurance is the foundation of the charge in the indictment, and upon which the alleged crime of larceny depends for its support.

The court charged the jury " that whether the insurance was legal or illegal, the reinsurance by the Thames and Mersey is of no consequence, assuming that the general agent of the Thames and Mersey had it represented to them that there was a reinsurance in their company which was entered in the books, and that relying upon it, their agents so representing, they paid the money on the strength of the representations, although that was false, that they would be guilty of the offense alleged in the indictment if they by

reason of the fact that the time had gone by when they could make a legal insurance the insurance itself was illegal."

The counsel for the defense took exception to the charge " that the question of the legality or illegality of an insurance or reinsurance in the Thames and Mersey Insurance Company has no bearing upon the crime." The first part of this portion of the charge might be so construed as to import, that whether the reinsurance in the Thames and Mersey was legal or illegal was of no consequence, while the latter part of it states a proposition which seems to make the guilt of the defendant depend upon the illegality of such reinsurance. But whether the court intended to be understood that such illegality was a requisite of the alleged crime in any view which could be taken of it, is not clearly demonstrated by the portion of the charge referred to taken together.

At the close of the charge the court was requested by the defendant's counsel to charge that, unless the jury find that there was no reinsurance taken by the Thames and Mersey Insurance Company on the cargo of the James Wade, they cannot convict the defendant under the first count in the indictment. To which the court answered : " I decline to charge except as I have upon that subject without declining specifically to do so." And exception was taken. By reference to the opinion delivered by the learned justice on the denial of motion for a new trial, it will be observed that in considering that question the invalidity of the reinsurance was not deemed by him essential to the offense charged in the indictment, or to the conviction of the defendant. The exception taken to the charge as made, in connection with that to the refusal to charge as requested, fairly raised the question for consideration here. And those exceptions present error requiring a new trial, unless it is obviated by other instructions to the jury. Later on in the charge the court instructed them that it was not the intent of the contract with the company, under which the defendant was acting, that a reinsurance could be effected after notice of the loss of the subject of insurance, and adds that the question of fact for the jury to determine is whether the insurance in question " was effected in the Thames and Mersey after notice came to the defendant of the loss of the vessel James Wade. If the jury should find that the reinsurance alleged and charged in the

indictment was effected after such loss, and that the defendant knew it, and that it was effected with intent and for the purpose of defrauding this company in which the insurance was made for the purpose of benefit of one company in preference to another, or for the agent's own benefit, or both, with that intent or felonious intent, then the offense charged in the indictment would be made out, otherwise not."

The proposition so charged seems to make the conviction of the defendant depend upon the fact that the reinsurance in the Thames and Mersey was made after the loss of the vessel, and after the defendant had notice or knowledge of such loss, which, in the view taken here, rendered such reinsurance invalid, and, therefore, this charge embraces fully the requisite fact in that respect.

When the jury found that the reinsurance was after the loss, and after such loss had come to the knowledge of the defendant, they had found the fact which denied to him the power to make the reinsurance or to charge that company with the loss. The portion of the charge last referred to correctly advised the jury of the facts they were required to find to justify the conviction of the defendant of the offense charged.

The question arises whether, in view of the instructions so given, the charge that the legality or illegality of the reinsurance was not important, can fairly be overlooked and treated as necessarily harmless, because the facts which the court advises the jury they must find to establish the offense are such as to render the reinsurance in question illegal. It may have been quite important for the jury to understand that the illegality of this reinsurance was an element necessary to constitute the alleged crime, else they may have been led to the consideration and effect of the purpose or intent of the defendant, and to the result given by the verdict without the determination of the question of his power, as agent of the company, to make the insurance. The defendant had the right to have the jury advised that they could not convict him under the indictment, unless the reinsurance was invalid, whatever may have been his purpose or intent in making it.

The entire charge may be considered in aid of the interpretation and effect of its several parts, and an apparently erroneous sentence or phrase may ordinarily be deemed modified and relieved from

such error by other portions of the charge stating the correct rule for the guidance of the jury; but when an important proposition is erroneously stated to the jury and not distinctly withdrawn, it does not necessarily follow that it may not have a prejudicial effect, although a rule complete in itself for the action of the jury is properly charged. (*Stokes v. People*, 53 N. Y., 165–184; *Chapman* v. *Erie Ry. Co.*, 55 id., 579; *Meyer* v. *Clark*, 45 id., 285; *Canfield* v. *Baltimore and O. R. R. Co.*, 14 J. & S., 238; *Duche* v. *Wilson*, 37 Hun, 519.)

Suppose the jury had been charged that they might find the defendant guilty, although the reinsurance in the Thames and Mersey was valid and imposed a legal obligation upon the company? Can it be said that no harm could come from it because the court afterward charged that the jury must find, to convict, that the reinsurance was made after knowledge in the defendant of the loss? While the legal effect of the two propositions may be inconsistent, the jury might still understand that the legality of the insurance was not in the way of conviction. And in that view the fraudulent purpose and intent of the defendant, in the execution of the power vested in him as agent of the company, might be treated by the jury as sufficient to constitute the crime of larceny, without the support of the invalidity of this contract of reinsurance, or of his want of power to make it. It cannot be seen that misapprehension of this fundamental proposition was not produced by the charge, as made, and the refusal to charge, as requested, in the respect in question, and that it did not have a misleading influence upon the views and action of the jury and an effect prejudicial to the defendant, and, therefore, we think this was error.

It is contended by the counsel for the defense that, in any view which may be taken of the evidence before referred to, the reinsurance was legal, and liability created by it, because the power vested in Crosby & Dimick by the Thames and Mersey Company was to make insurance upon "all kinds of goods, wares, merchandise and produce laden on board the good vessel or vessels, boat or boats, * * * *lost and not lost*, at and from all ports and places, to ports and places," etc., and that the power to insure after loss was not dependent upon want of knowledge that the subject of the insurance was lost.

The mere fact that a vessel is lost at the time of its insurance does not affect the validity of a marine policy which imports a purpose to embrace a past as well as future loss of the property insured, and when taken in good faith the insured is entitled to indemnity to the extent provided by it for a loss then already occurred. (*General Interest Ins. Co.* v. *Ruggles*, 12 Wheat., 408; *Insurance Co.* v. *Folsom*, 18 Wall., 237; *Hooper* v. *Robinson*, 98 U. S., 528.)

But when the insured, at the time of his application for insurance, knows that the property is lost or destroyed, the policy, although it, by express terms, covers it lost or not lost, will not be effectual or valid, nor will it when the applicant fails to disclose a then perilous situation within his knowledge of the property material to the risk. (*Insurance Company* v. *Lyman*, 15 Wall., 664.) It is said that when the loss is known to both parties to the contract of insurance that rule does not apply. And *Mead* v. *Davidson* (3 Adol. & E., 303) is cited in support of the contention, and sought to be applied, because the defendant's firm, as general agents, represented all the companies affected, and whatever knowledge the defendant had was that of those companies for the purposes of the action taken by way of the reinsurance.

In *Mead* v. *Davidson* the ship was proposed and accepted for insurance, and the premiums paid in February, 1829, but the policy was not formally executed until October following, and at the time it was so executed the ship was lost, and that fact was known to both parties to the policy, which was executed on the part of the insurance society by its agent under a general power of attorney. The court held that the policy was valid and the plaintiff recovered. That was a mutual insurance association, and its rules provided that insurances should commence on the day on which the ship was accepted by the committee, and continue in force twelve months therefrom.

It is very likely that by relation to the time of such acceptance and payment of the premium, the power of the agent in that case may have been deemed effectual to consummate the formal execution of the contract of insurance after the intermediate loss, and with knowledge of it, although by the then law of England it does not very clearly appear how any legal force could be given to an

unexecuted contract of insurance prior to the statute (30 Vic. C., 23), by which evidence was permitted of a previously made contract of that character in support of the relation back to it of the subsequent formal execution of it. (*Cory* v. *Patton*, L. R., 7 Q. B. Div., 304; S. C., 9 id., 577; *Lishman* v. *Northern Maratime Insurance Company*, L. R., 8 C. P., 216; S. C., 10 id., 179.)

While it may be assumed that a contract of marine insurance, entered into after the loss of the subject of it, when both parties to the contract have full knowledge of the situation, may be effectual as such, it is quite evident that no agency, however general in terms, would be deemed to embrace the power to insure property after, and with knowledge of, its loss. This might be subversive of the very purposes of the organization for the purposes of the business of insurance. The presumption is, that power is vested in agents for the promotion and protection of the interest of the principal, and not for its destruction, and that the power vested in them is for purposes only which may be deemed legitimate in the business of the employment.

The provision giving effect to marine policies, although the property may be lost at the time the undertaking is assumed, is dependent upon the good faith of the insured; and in view of the unknown situation of the property and the uncertainty which may exist of the time when losses occur upon the large navigable waters, such a rule is somewhat necessary to the certainty and efficiency of such contracts of insurance. The defendant, or his firm, voluntarily made the reinsurance, and in doing it the defendant represented the company which he sought to relieve, and the firm represented the company which it was sought to charge.

The court was asked to charge the jury that if they find that the cargo of the Wade was reinsured in the Thames and Mersey after the defendant had notice of the loss of the cargo, believing that he had the right to make such reinsurance, no crime was committed by him, and exception was taken to the refusal to charge except as the court had already charged on that subject. The belief of the defendant that he had the right is not inconsistent with the intent to defraud the company; and with such intent, without any right to do the act, it is not apparent that his belief would necessarily protect him against the charge of the crime. The question of intent would

still remain for the consideration of the jury, and the absence of such intent is not embraced in the requested proposition. But, in any view, this subject was so fully covered by the charge that it is unnecessary to give this exception further consideration.

We deem it unnecessary to do so for the purposes of this case, and, therefore, do not consider the question whether the defendant or his firm, at any time after making the reinsurance in the Continental, had the right to cancel it and transfer the amount, or any portion of it, so reinsured to another company, or to restore the whole amount to the sole risk of the company, which originally took the direct insurance; and the request to charge that the Continental, notwithstanding the attempted cancellation of its reinsurance, remained liable, does not seem to present any proposition involved in the determination of this case, and, therefore, it requires no consideration.

It is contended on the part of the defense that the alleged crime was committed in the city of New York and not in the city of Buffalo, and, therefore, the indictment was found and conviction had without jurisdiction. The indictment was found in the Superior Court of the city of Buffalo. This is a court of local jurisdiction. (Code Crim. Pro., § 28.) The facts are that the draft or order was drawn in Buffalo by the defendant, in the name of his firm, upon the general manager of the Thames and Mersey, who resided in New York city, and sent to him there, where it was accepted and a check by him drawn to pay it, upon a bank of the latter city, and it, or the proceeds, were sent to the firm at Buffalo, and there received by the defendant for his firm. With the draft was also sent to such general manager a receipt for the amount, purporting to have been executed in behalf of the Union Insurance Company by the defendant's firm, and the proceeds of the draft were deposited in a Buffalo bank to the credit of the defendant, as general agent, in whose name the bank account of the firm was kept, and the amount credited to Thames and Mersey Company in the ledger kept at the office there in the business of that company. The obtaining the money was the consummation of the offense; but a necessary element of it was also the false representations, or the color or aid of the draft, with the intent to defraud. The defendant did the act which produced the apparent liability of the company

at Buffalo, and there made or produced the representations and the draft, by the color or aid of which he proceeded to obtain the money which he received there. He, by this means, spoke at Buffalo to McDonald in New York and received his response in Buffalo, and thus the alleged offense was consummated. The statute provides that "when a crime is committed partly in one county and partly in another, or the acts, or effects thereof, constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." (Code Crim. Pro., § 134.)

The fact that the company was induced to, and did, in New York city, part with its money by means of the effect upon it there of the representations or of the color or aid of the draft, would seem to give the courts of that city jurisdiction of the offense. (*People v. Adams,* 3 Denio, 190 ; affirmed, *Adams* v. *People,* 1 N. Y., 173.) But, although it may be said that the money was obtained from the company in the city of New York, some of the acts "'constituting or requisite to the consummation of the offense" occurred in the city of Buffalo, within the meaning of this statute, which brought the case within the jurisdiction of the Superior Court of that city.

Among the large number of exceptions taken to the reception of evidence, was one to the introduction of a copy of the complaint in a civil action, in which the Thames and Mersey Company was plaintiff, against the defendant. The complaint purported to be verified by the affidavit of McDonald, the general manager for the plaintiff. He was called as a witness for the prosecution, and on his cross-examination testified that he had sworn to some of the complaints in civil actions referred to. He was then asked if he swore to certain things particularly mentioned in reference to the schooner, James Wade, its loss and the time of its loss, and in reference to the risk taken upon her, and the reinsurance.

The people then offered the copy complaint, and " the whole of it," in evidence, the objection to which was overruled and exception taken. The court in overruling the objection remarked that it was " put in evidence for the purpose of showing what he testified to," and that it could not be " evidence upon any other point." This paper as a whole was not competent evidence, and only such parts of it were admissible as were referred to in his cross-examination.

The complaint was quite lengthy. It contained thirteen alleged

causes of action against the defendant, and some of them were founded upon alleged grave charges of misconduct, fraud and bad faith on his part in the business of the agency of his firm for the Thames and Mersey Company, and comparatively only a small part of it had any relation to the James Wade, its loss, and the insurance and reinsurance of its cargo. ·

While the ruling of the court qualified the purpose for which the pleading was received in evidence, it did not restrict the reception to any portion less than the whole of it. And it cannot be seen that the defendant may not have been prejudiced by the narration of the charges set forth in it. The introduction of this complaint as evidence implies that the statements contained in it, in some manner, went to the jury, although it does not expressly appear by the record that it was read, or the contents stated to them. And the qualification of its purpose as evidence cannot be said to have wholly defeated its effect as such upon the jury, nor can it be said that it produced no impression upon their minds to the prejudice of the defendant. (*Erben* v. *Lorillard*, 19 N. Y., 299; *Baird* v. *Gillett*, 47 id., 186.)

When incompetent evidence may have a tendency to arouse the prejudices of the jury it cannot be deemed harmless. (*Anderson* v. *Rome, W. and O. R. R. Co.*, 54 N. Y., 334.) And this rule applies in both civil and criminal cases, and with even greater force in the latter than in the former.

In this case there were some close questions of fact arising out of a conflict of evidence, and depending somewhat upon inferences to be derived from facts and circumstances which the evidence tended to prove, and it was quite important that no stimulating influences of illegal evidence, to the action or conclusions by the jury should be permitted.

The objection taken to the introduction of the complaint was general, but as the whole of it so offered could not in any view or in any conceivable event be competent evidence for any purpose, the general objection was sufficient to raise the question and make the exception available to present error. (*Quinby* v. *Strauss*, 90 N. Y., 664; *Bergmann* v. *Jones*, 94 id., 51.)

It therefore becomes unnecessary to consider any of the other exceptions taken to the admission of evidence for the purposes of the result here. And none of them seem to be of a character so

substantially going to the merits of the case as to require the expression of the opinion of the court with a view to the trial which may follow.

For the reasons before given, and upon those grounds alone, the judgment and conviction should be reversed, and a new trial ordered.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Judgment and conviction reversed, and new trial ordered, and for that purpose the proceedings are remitted to the Court of Oyer and Terminer of Erie county.