CHARLES GILPIN, JR., APPELLANT, *v.* JOHN DALY, RESPONDENT, AND JOHN DOE AND RICHARD ROE, DEFENDANTS.

*Gaming — Penal Code, section 342, applies to action to recover the moneys lost — examination of defendant before trial.*

Section 342 of chapter 9 of the Penal Code, providing that a person shall not be excused from testifying in any investigation or proceeding for a violation of that chapter because his testimony would tend to convict him of a crime, and, further, that such testimony shall not be received against him in any criminal investigation or proceeding, will be deemed to have been enacted in aid of the policy of this State, adopted from an early date, to force the winner of money lost by gaming to give evidence in order to support an action for its recovery.

Such section was intended to combine in one general provision all the previous legislation on the subject, including 1 Revised Laws (153, § 3) and 1 Revised Statutes (663, 664, §§ 18, 19).

A complaint in a civil action which alleged that the treasurer of a foreign corporation had wrongfully taken its moneys and lost them at a gambling-house charged to have been maintained by the defendant in the action, and by other persons unknown, constitutes an "investigation" or "proceeding," within the meaning of the statute, and alleges a violation of section 342 of the Penal Code.

In such an action the plaintiff is entitled to an order to examine the defendant before trial.

As section 342 of the Penal Code forbids the use of defendant's answers against him in any criminal proceeding, he is not excused, on the ground that his answers will criminate him, from answering the questions put to him upon such an examination.

APPEAL by the plaintiff Charles Gilpin, Jr., from an order, entered in the office of the clerk of the county of New York on the 19th day of November, 1890, vacating an order requiring the defendant John Daly to appear and submit to examination before trial, which latter order was granted October 8, 1890.

*John L. Cadwalader*, for the appellant.

*John Graham*, for the respondent.

DANIELS, J.:

This action has been brought to recover the sum of $5,500, moneys owned by the Glamorgan Iron Company, a corporation existing under the laws of the State of Pennsylvania, and charged to have been

lost by gaming at a gaming establishment, in whole or in part, maintained by the defendant at No. 39 West Twenty-ninth street, in the city of New York. It is alleged that these moneys were wrongfully taken by the treasurer of the company and lost by gambling at that establishment, and won by and paid to this defendant and other persons intended to be included with him as defendants in the action. After the moneys had been lost in this manner the company made an assignment for the benefit of its creditors to the plaintiff, and it is under the title so acquired that he has brought this action for an accounting and recovery of these moneys. And if they were in this manner lost and won, either by the defendant alone, or acting in concert with other persons, then there seems to be no well-founded objection standing in the way to prevent the plaintiff from maintaining the action.

The affidavits, on which the order for the examination of the defendant was made, have complied in their formal statements with all the requisites prescribed for that object by the Code of Civil Procedure. And it is shown by that of the plaintiff that he is dependent upon the information expected to be obtained from the defendant for his ability to connect him with this establishment as one of the proprietors thereof, and to subject him to a liability to refund this money. His examination before the trial is shown to be necessary to obtain evidence to support the action, and there is a probability that it can be derived from no other source. It is not liable, therefore, to the objection taken to its general insufficiency, for the affidavit has complied with all that has been exacted by the case of *Jenkins* v. *Putnam* (106 N. Y., 272) and the other authorities brought, on behalf of the respondent, to the attention of the court.

The order for the defendant's examination was not vacated because of any formal defect in the affidavits on which it was made. But that was ordered upon the objection stated in the affidavit of the defendant, that he is not obliged to answer under oath, generally or specifically, any of the allegations implicating or connecting him with gambling, or the pretended gambling transactions charged in the moving affidavits. And it has been declared by the law in general terms, that a person will not be required to give evidence, having a tendency to prove that he has been guilty of a crime. And the principle has been applied to suits in equity, where it has

been held that a defendant would not be directed to answer on oath when his answer must have that effect. (*McIntyre* v. *Manetus*, 16 Johns., 592.) But the protection of the public, as well as of its individual members, has from time to time induced the enactment of legislative exceptions to this general rule. They have been framed more effectually to discover the existence of offenses committed in seclusion and concealment, by bringing their participants before the courts and compelling them to disclose their own participation in and knowledge of these offenses, but at the same time excluding the use of their disclosures as evidence against the person or persons making them in any criminal prosecution. And the loss and gain of money by gaming or gambling has been considered to be a proper subject for this description of legislation. Accordingly, in the Revised Laws of this State in 1813, after declaring gaming to be unlawful and providing a remedy for the recovery of the money thereby lost, and following an enactment to the same effect in 9 Anne (chap. 14, § 3) it was provided that every person liable to suit under its provisions should be compelled to answer, upon oath, such bill as should be exhibited in the Court of Chancery against him, for discovering the money or other things won at play, contrary to the intent and meaning of the act. And in the action the court was thereby empowered to proceed and decree thereupon, and enforce the decree as was usual in other causes in the court. (1 Rev. Laws, 153, § 3.) And that was made to operate as a discharge of the defendant from further punishment, forfeiture or penalties incurred in or about the subject-matter of the suit.

These provisions disclose it to have been the policy of this State, at that early day, to provide for the redress of the wrongs produced by gaming, by extorting from the winner the evidence he might be able to give in the way of supporting an action for the recovery of money lost by gaming. And they were followed by others, made a part of the Revised Statutes in 1830, enlarging and rendering them still more effectual. For, in addition to the continuance of the obligation of the winner to answer a bill of discovery, and the power vested in the court by its decree to compel the return of the money, it was declared that no person, other than the parties in the cause, should be incapacitated or excused from testifying touching any offense committed against any of the preceding prohibitory

provisions of the law, by reason of his having played, bet or staked, at any game ; but his testimony should not be used in any suit or prosecution thereby authorized against himself. (1 R. S., 663, 664, §§ 18, 19.) These two sections provided for securing a complete discovery of alleged gaming transactions, first, by the evidence of all persons having knowledge concerning them, who should not be parties to the action, and, secondly, by the answer, on oath, of the party proceeded against to the bill of discovery. And the answer was not deprived of any of its effect by the next section declaring that it should not be used as testimony in any case against the person making the discovery. For that must have been intended to relate to any other suit than the suit in which the discovery should be made, as the decree in that suit was allowed to compel the party to it to return the money it should be brought to obtain. By these sections complete authority was supplied for obtaining the evidence of all persons participating in or having knowledge of gaming transactions and for the recovery of the money won thereby. They included all that could be required or provided. For in this class of cases every person was required to give his evidence, either when sworn and examined as a witness or by answering on oath the bill of discovery.

And it was in this state of the law that the Penal Code was enacted in 1861, which, by section 342, declared that : " No person shall be excused from giving testimony upon any investigation or proceeding for a violation of this chapter, upon the ground that such testimony would tend to convict him of a crime ; but such testimony cannot be received against him upon any criminal investigation or proceeding." It could not have been intended that this section should, in any respect, abridge the efficiency of what had previously been enacted upon this subject. But as the bill of discovery had been generally abolished, the intention was to combine in one general section, as this is, all that had previously existed in these two sections of the Revised Statutes. There was no cause for reducing or restricting the preceding law, but there was for changing its form, to render it harmonious with the progress which had been in other respects attained. And that is probably all that was designed to be accomplished by this change of language. This probability is also confirmed by chapter 593 of the Laws of 1886,

which, by its first section, repealed the two sections already mentioned of the Revised Statutes. That certainly would not have been done without the legislative understanding that this section of the Penal Code comprehended all that had been included in the preceding law. Any different conclusion would necessarily support the conviction that the legislature intended to tolerate gaming transactions by excluding the ability to obtain the evidence of their existence, and that, there can be no reason for believing. What appears to have been intended, and what was, in fact, accomplished, was to combine the preceding law in one section, which, by its general language, was made to include all the participants in, and parties to, gaming transactions. And this action is directly within the section, for it is a proceeding and includes an investigation for a violation of the provisions of the chapter of the Penal Code containing this section. This language, while not the most artistic, is still entirely comprehensive, including, as it does, all possible investigations and proceedings. And that this was the understanding of its effect is further disclosed by the last clause of the section, declaring that the testimony so obtained shall not be received against the person giving it upon any criminal investigation or proceeding. This last-mentioned investigation or proceeding can only be such as may be taken for the examination, indictment or punishment of crime, and, consequently, must have been intended to include those proceedings. And the effect of this clause is to apply, with equal reason, the preceding part of the sentence to all personal actions and prosecutions for the recovery of money lost by gaming.

These actions are, as the phrase has here been used, investigations and proceedings for a violation of the other sections of the same chapter of the Penal Code. And similar phraseology employed in another part of the Penal Code was, in this manner, construed and applied in *People* v. *Sharp* (107 N. Y., 437).

This chapter of the Penal Code has made it unlawful for a person to exact or receive from another, either directly or indirectly, any money or valuable thing by reason of the same having been won by playing at cards, faro, or any other game of chance, or for any bet or wager upon the hands or sides of the players. And has declared it to be a misdemeanor for any person to keep a room, shed, tene-

ment, tent, booth, building, float or vessel, or any part thereof, to be used for gambling, or for any purpose, or in any manner forbidden by this chapter. (Id., §§ 340, 343.) And the complaint in this action charges the defendant with a violation of each of these sections. And to maintain this charge, an examination of the defendant before the trial has been shown to be necessary by the way of obtaining evidence to establish its truth. An investigation is to be made in the action to prove this charge. And that places this suit within the language, as well as the spirit, of the section, depriving every person of the privilege of refusing to testify in it on the ground that his testimony will tend to convict him of a crime. The testimony obtained cannot be used to bring about his conviction of a criminal offense, and for that reason he has been obliged to give his evidence when it may be required in support of a civil action.

This legislation is in complete harmony with the general policy which has been adopted to secure the discovery of other secret and fraudulent violations of the law. When that may be successfully concealed by the contrivances and artifices of the parties, the policy has been to oblige them, under the solemnity of their oaths, to appear and disclose the facts, exposing their transactions to the discovery of the tribunals empowered to investigate them. And as a part of this policy, not only betting and gaming practices are to be brought to the light of judicial scrutiny and correction, by the evidence of the parties to or concerned in them, but the same principle of unlimited discovery has been also applied to fraudulent dispositions of the property of debtors. Provisions for that object were enacted soon after those for the discovery by the evidence of the parties in civil actions of losses by gaming and betting. They are found as early as chapter 17 of the Laws of 1823, requiring every person to answer as to such transactions, but at the same time guarded by the same protection that the evidence obtained shall not be used against the person giving it in any prosecution for the criminal misdemeanor committed by his fraudulent misconduct. And this, in substance and effect, has ever since then remained the law applicable to the disposition made by a debtor of his property, with the intention to defraud his creditors. (Laws of 1833, chap. 14; 2 R. S., 174, § 41; Code of Civil Pro., § 2460.) A similar practice has also been made applicable to usurious transactions and their

discovery. (2 R. S. [6th ed.], 1166, § 11.) And to the purchase of things in action by attorneys and others to institute suits thereupon. (3 R. S. [6th ed.], 449, §§ 59–70.) And which still remains the law, except so far as it may have been qualified by the questionable policy of the Code of Civil Procedure, allowing attorneys to become interested in the fruits and proceeds of suits prosecuted by them.

This legislative policy requires that the section contained in the Penal Code, which has already been examined, shall be construed with a reasonable degree of liberality to promote the remedy it has been designed to advance, and under that construction this action is within its language and intent. The defendant is, therefore, legally bound to appear and submit to an examination, on oath, to verify, as far as he may be able to do that, the facts brought in issue by his answer in this action, and thereby to supply the plaintiff with the evidence which has become requisite to maintain this suit.

It is but just to the court making the order from which the appeal has been brought to add that the statutes affecting the question involved were not referred to by the counsel when the application to vacate the order for the defendant's examination was heard, as, indeed, they were not on the argument of the appeal. If they had been, that order would not then have been vacated, for the law, as it is now in force, does supply all needed authority for subjecting the defendant to a full, searching and complete examination for the discovery of the facts included in the issue in this action.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Order reversed, with ten dollars costs and disbursements, and the motion denied.