PEOPLE ex rel. LEWINSOHN v. O'BRIEN, Sheriff, et al.

SAME v. WYATT, Justice of Court of Sessions.

(Supreme Court, Appellate Division, First Department. March 6, 1903.)

1. WITNESS—PRIVILEGE—INCRIMINATING EVIDENCE—STATUTORY PROTECTION—SUFFICIENCY.

Under Const. art. 1, § 6, providing that no person can be compelled in any criminal case to be a witness against himself, a witness examined before a magistrate on an information charging another with keeping a gambling house cannot be compelled to give evidence tending to incriminate himself, notwithstanding Pen. Code, § 342, contained in chapter 9, relating to "Gaming," provides that no person shall be excused from giving testimony upon any investigation or proceeding for a violation of the chapter because such testimony would tend to convict him of a crime, but such testimony cannot be received against him upon any criminal investigation or proceeding, as a witness cannot be compelled to even disclose circumstances or sources of evidence which would aid his prosecution, and any statutory protection, short of absolute immunity from prosecution, is insufficient.

McLaughlin and Hatch, JJ., dissenting.

Appeal from Special Term, New York county.

Habeas corpus by the people of the state of New York, on the relation of Jesse Lewinsohn, against William J. O'Brien, sheriff of New York county, and Michael J. Gannon, peace officer. Certiorari by the people, on the same relation, against William E. Wyatt, justice of the court of sessions of the First district of the city of New York. From an order of the special term (80 N. Y. Supp. 198) denying his petition to be discharged from custody on the above writs, dismissing the proceedings, and remanding relator to the custody of respondent Gannon, relator appeals. Reversed.

This is a proceeding to determine whether or not Jesse Lewinsohn was legally in custody on a charge for a violation of subdivision 6 of section 143

of the Penal Code. The charge is that he "willfully, contumaciously, and unlawfully refuses to answer legal and proper interrogatories put to him after he had been duly affirmed as a witness to tell the truth in a criminal proceeding then pending before Hon. William E. Wyatt, justice of the court of special sessions, First district of the city of New York, sitting as a magistrate," upon information laid before the said justice by the district attorney of the county of New York against Richard A. Canfield, accusing the said Canfield of crime. The information against Canfield was laid before the magistrate on the 9th day of December, 1902, and the following is a copy of the portion deemed material:

"Upon information and belief, I allege that in the city of New York, in the county of New York, on the first day of January, 1901, and thereafter continuously until the first day of December, 1902, one Richard A. Canfield did. at the city and county of New York, in the premises known as 'No. 5 East 44th Street,' in the borough of Manhattan, city of New York, said premises being a four-story and basement house, use certain rooms and allow to be used certain rooms in said premises for gambling, in that he, the said Richard A. Canfield, then and there having full control of said premises, did allow to be played in said premises certain gambling and banking games, where money or property was dependent upon the result, to wit, the games known as 'roulette' and 'faro,' and during the times aforesaid then and there said games were by divers persons, to this deponent unknown, played for money; that said game of faro and said game of roulette are gambling and banking games, all of which was well known to said Richard A. Canfield, and was done by and with his consent, and by his agents and employés, and for the purpose of making a profit for him, the said Richard A. Canfield."

At the request of the district attorney the said magistrate issued subpœnas on behalf of the people to certain persons, including the relator, to appear before him and testify, pursuant to the provisions of section 608 of the Code of Criminal Procedure. On the 16th day of December, 1902, the relator appeared at the place mentioned in the subpœna, accompanied by his counsel, who was excluded from the room by the magistrate. On the examination the witness refused to answer the question, "Mr. Lewinsohn, do you know Richard A. Canfield?" on the ground that it might tend to incriminate him. The assistant district attorney, who was conducting the examination, promised immunity from prosecution to the relator, read to him section 342 of the Penal Code, and obtained the magistrate's concurrence in his promise of immunity. The witness still declined to answer, upon the magistrate's instruction to him to do so, and he was then allowed to withdraw from the room. Another district attorney then presented to the magistrate a deposition made by him, making the above charge against the relator, and the magistrate issued a warrant for the arrest of the relator, which was given to a peace officer of the county of New York, who arrested the relator. On the same day, a writ of habeas corpus was obtained directed to the sheriff and the peace officer, also a writ of certiorari directed to Justice Wyatt; and issue joined by their returns thereto, together with the traverse of the relator, was heard by Justice Scott. of the Supreme Court, on the 19th day of December, 1902. the writs dismissed, and the relator remanded to the custody of the peace officer. Thereafter the relator was arraigned on the said warrant of arrest before Justice Wyatt. and his examination was adjourned until 2 p. m. of the 22d day of December, 1902, and he was paroled in the custody of his counsel. While the proceedings on the arraignment were still pending, he was again subpœnaed to give evidence. He attended at the time and place designated. accompanied by his counsel. who again demanded to be allowed to be present, stating that as, upon inquiry, an effort might be made to obtain testimony tending to incriminate the relator, he was entitled to be present as his counsel; but the magistrate ruled against him on this, and he was excluded from the room. It appears from the stenographer's minutes that the only persons present at the hearing. besides the relator and the magistrate, were the district attorney, his assistants. and the stenographer.

Upon being called as a witness the relator stated: "Before being sworn in any proceedings taken here, I demand that my counsel be present, and I further demand that this proceeding be public. I protest being sworn on the

ground that these proceedings are private proceedings, and are not public; that my counsel and the public have been excluded; on the ground that there was no authority in law for the issuance of a subpœna in this proceeding requiring my attendance, nor any authority in law requiring me to attend; that the subpœna served upon me is unlawful; that the court has no jurisdiction to entertain these proceedings or examine me as a witness, and, if my protests and objections be overruled by your honor, I desire them nevertheless to be noted on the record, so that I shall not be deemed by my subsequent action to have waived them." The magistrate overruled the objection, and the witness stated, in answer to a question, that he did know Richard A. Canfield; but during his examination, after having answered other questions, he was asked, "Well, when did you first become acquainted with the premises, 5 East Forty-Fourth street?" and answered, "I decline to answer, for the reason that the answer may tend to incriminate me, and that it might tend to expose me to a penalty or forfeiture; that this proceeding is not a legal proceeding, as it is not public, my counsel having been excluded; that there was no authority in law to compel me to appear here and testify; that I have been sworn only under compulsion, after having made my objection and protest; that, as I am informed, there is no information before your honor against Richard A. Canfield, but a proceeding on information which was at one time before your honor, but which is no longer in this court, inasmuch as it has been removed to the grand jury." The witness declined to answer the questions, "Prior to the 1st of December, 1897, did you know the premises No. 5 East Forty-Fourth street?" and "Prior to the 1st of December, 1897, were you ever in the premises No. 5 East Forty-Fourth street?" for the same reasons. The witness still persisting in this attitude, even upon the magistrate directing him to answer, the hearing was adjourned.

It appears that the relator informed his counsel of the questions which he had declined to answer, and he was advised that the statute of limitations would be a bar to a criminal prosecution for any crime committed at the time to which the questions related; and upon his counsel informing the magistrate that his client declined to answer in ignorance of the statute, and was now willing to answer the questions previously asked of him, the proceeding was resumed. After again taking the stand, the witness was asked: "Q. I repeat the question. Prior to the 1st of December, 1897, were you ever in the premises No. 5 East Forty-Fourth street? A. No. Q. Have you ever been there in your life? A. I decline to answer, on the grounds given before. Q. Have you ever been in the premises No. 5 East Forty-Fourth street, in the city and county of New York? A. I decline to answer on the ground that it might tend to incriminate me. The Court: I direct the witness to answer. The Witness: You ask me, in my life? Mr. Osborne: Yes. The Court: Having had the promise of immunity and under the section of the Code, I direct you to answer. Mr. Jerome: You understand, Mr. Lewinsohn, that the promise of immunity of the district attorney is absolute and complete, and he offers to accept you as state's witness in this matter, and promises that no prosecution of any kind or nature whatsoever will be had against you by reason of any matter or thing that may appear in your testimony, or any matter or thing that you have done in connection with the matter which you may testify to, and that also the statute gives you immunity—you understand that? A. I do. By Mr. Jerome: Q. And that the court now consents to the offer of the district attorney to accept you as state's evidence in this matter, and approves of the immunity offered you, which I take to be correct? The Court: That is right. Q. And that not only is there this immunity guarantied to you by the district attorney, but that section 342 of the Penal Code also guaranties you immunity. With all that clearly in your mind, you decline to answer on the ground that it would tend to incriminate you? A. Yes, and that it may tend to expose me to a penalty or forfeiture. By the Court: I direct you to answer. A. I respectfully decline, Judge."

Upon the final refusal of the relator to answer, he was allowed to withdraw from the room and the magistrate thereupon, upon the depositions of a deputy assistant district attorney and of the stenographer, setting forth all the proceedings in full, issued a warrant for the arrest of relator, which was delivered to one Michael J. Gannon, a peace officer of the county of New York,

who arrested the relator. Before the relator was arraigned Gannon was served with a writ of habeas corpus, commanding him to bring the relator before Justice Scott of the Supreme Court; and another writ of certiorari was also obtained directed to Justice Wyatt. Upon the hearing of the issue joined by the answer to the return of the writ of habeas corpus and the demurrer to the return of the writ of certiorari, the order appealed from was made.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Alfred Lauterbach, for appellant.

Howard S. Gans, for respondent.

LAUGHLIN, J. No question relating to the regularity of the practice upon the issue of the writ of habeas corpus and certiorari is presented. The principal question arising on the appeal is whether the information filed against the relator, on which the warrant was issued, discloses facts showing the commission of a crime by him (People ex rel. Bungart v. Wells, 57 App. Div. 140, 68 N. Y. Supp. 59); and this depends upon whether he was justified in refusing to answer the questions on the ground of the privilege conferred by section 6 of article 1 of the State Constitution. If not, the question was both relevant, material, and proper, and his refusal to answer, assuming that the information filed against Canfield gave the magistrate jurisdiction, authorized his punishment by the magistrate, under section 619 of the Code of Criminal Procedure, "as for a criminal contempt, in the manner provided in the Code of Civil Procedure," and subjected him to a criminal prosecution for a misdemeanor under subdivision 6 of section 143 of the Penal Code, which provides as follows:

"A person who commits a contempt of court, of any one of the following kinds, is guilty of a misdemeanor: * * * Contumacious and unlawful refusal to be sworn as a witness, or, after being sworn, to answer any legal and proper interrogatories."

The offer of the district attorney and the consent of the magistrate to grant the relator immunity from any criminal prosecution would not bar such a prosecution, and therefore could not afford him full immunity therefrom.

Section 342 of the Penal Code, contained in chapter 9 relating to "Gaming," which embraces various crimes commonly known as gambling and kindred offenses, provides as follows:

"No person shall be excused from giving testimony upon any investigation or proceeding for a violation of this chapter, upon the ground that such testimony would tend to convict him of a crime; but such testimony cannot be received against him upon any criminal investigation or proceeding."

It is contended in behalf of the people that this section affords the relator the full measure of immunity guarantied by said section 6 of article 1 of the State Constitution, which provides, among other things, that:

"No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use without just compensation."

The relator, on the other hand, contends that if he shall be required to testify that he visited this alleged gambling house, and to answer other questions relating to his visits there and to what transpired, information will be disclosed which will afford a basis for a criminal prosecution against him for some of the crimes embraced in said chapter 9 of the Penal Code, even though his evidence cannot be introduced against him on the trial. The people rely on the case of People v. Kelly, 24 N. Y. 74, which, if it remains in full force as an authority for all that was decided, would undoubtedly be controlling, and under it the relator would not be excused from answering the questions; for it was there held that this provision of the State Constitution does not protect a witness in a criminal prosecution against another from giving testimony which may implicate him in a crime, when he has been protected by a statute against the use of such testimony on his own trial, even though the information thus elicited facilitates the discovery of other evidence by which the witness may be subsequently convicted, and, furthermore, that this constitutional protection only extends to evidence given by a party upon a criminal prosecution against himself.

The fifth amendment to the Federal Constitution which was ratified by this state on the 27th day of March, 1790, provides that no person shall "be compelled in any criminal case to be a witness against himself." At that time there was no similar provision in our State Constitution; but in the second State Constitution, which was ratified by the people in 1822, a provision the same as that now contained in section 6 of article 1 was incorporated in section 7 of article 7 in precisely the same language as that contained in the Federal Constitution, and presumably adopted therefrom. Similar provisions, in some instances differently phrased, were incorporated in the constitutions of the several states. As these constitutional provisions came before the courts for judicial construction, the decisions were not uniform. It was held by the highest court in some states that nothing short of absolute immunity from criminal prosecution for a crime would justify requiring a witness in any action or judicial proceeding, whether against himself or another, to disclose his knowledge of facts that might tend to indicate that he was guilty of an offense; and in some other states, as in this, it was held that immunity against the introduction upon a criminal prosecution of the evidence thus elicited was the extent of the constitutional guaranty.

It is manifest that these corresponding provisions of the Federal and State Constitutions were designed to confer the same individual rights and afford the same protection; and, as has been since declared by the Supreme Court of the United States, they should receive the same construction. That learned court, in an opinion delivered by Mr. Justice Blatchford, in which all concurred (Counselman v. Hitchcock, 142 U. S. 547, 585, 12 Sup. Ct. 195, 206, 35 L. Ed. 1110), discussing this point, said:

"But, as the manifest purpose of the constitutional provisions, both of the states and of the United States, is to prohibit the compelling of testimony of a self-criminating kind from a party or a witness, the liberal construction which must be placed upon constitutional provisions for the protection of per-

sonal rights would seem to require that the constitutional guaranties, however differently worded, should have, so far as possible, the same interpretation. * * * It is contended on the part of the appellee that the reason why the courts in Virginia, Massachusetts, and New Hampshire have held that the exonerating statute must be so broad as to give a witness complete immunity is that the Constitutions of those states give to the witness a broader privilege and exemption than is granted by the Constitution of the United States, in that their language is that the witness shall not be compelled to accuse himself, or furnish evidence against himself, or give evidence against himself; and it is contended that the terms of the Constitution of the United States and of the Constitutions of Georgia, California, and New York are more restricted: But we are of opinion that, however this difference may have been commented upon in some of the decisions, there is really, in spirit and principle, no distinction arising out of such difference in language."

The court, in the opinion in that case, considered the various constitutional provisions and the decisions made thereunder on the precise point now under consideration. The court in that case further said:

"It is a reasonable construction, we think, of the constitutional provision, that the witness is protected 'from being compelled to disclose the circumstances of his offense, the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual to his conviction, without using his answers as direct admissions against him.'"

The quotation made by the court was from Emery's Case, 107 Mass. 172, 182, 9 Am. Rep. 22. The court further said:

"We are clearly of opinion that no statute which leaves the party or witness subject to prosecution after he answers the criminating questions put to him can have the effect of supplanting the privilege conferred by the Constitution of the United States. Section 850 of the Revised Statutes [U. S. Comp. St. 1901, p. 655], does not supply a complete protection from all the perils against which the constitutional prohibition was designed to guard, and is not a full substitute for that prohibition. In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecutions for the offense to which the question relates. In this respect, we give our assent rather to the doctrine of Emery's Case, in Massachusetts, than to that of People v. Kelly, in New York."

Since this decision by the Federal Supreme Court, as might be expected, the judicial tribunals of several states have adopted the views of the Supreme Court of the United States in construing such constitutional provisions; and in some instances, where it became necessary to overrule former decisions of the same state courts. Lampson v. Boyden, 160 Ill. 613, 43 N. E. 781; Smith v. Smith, 116 N. C. 386, 21 S. E. 196; Ex parte Cohen, 104 Cal. 529, 38 Pac. 364, 26 L. R. A. 423, 43 Am. St. Rep. 127; Ex parte Buskett (Mo.) 17 S. W. 753, 14 L. R. A. 407, 27 Am. St. Rep. 378, overruled by In re Carter, 166 Mo. 604, 66 S. W. 540, 57 L. R. A. 654; Miskimins v. Schaver (Wyo.) 58 Pac. 411, 49 L. R. A. 831.

Assuming, without deciding (see Am. & Eng. Enc. of Law [2d Ed.] vol. 6, p. 965; O'Neil v. Vermont, 144 U. S. 323, 12 Sup. Ct. 693, 36 L. Ed. 450; Maxwell v. Dow, 176 U. S. 581, 20 Sup. Ct. 448, 44 L. Ed. 597), that the fifth amendment to the Federal Constitution only applies to actions and proceedings in the Federal Courts, and that the decision of the Supreme Court in Counselman v. Hitchcock, supra, for that reason is not binding upon us, yet, the question

being akin to those questions of personal and property rights that are guarantied to all citizens by the Federal Constitution, there could be but little doubt, even if there were no other decisions by our own Court of Appeals, that when the question is again presented our Court of Appeals would apply the liberal rule expounded by the Supreme Court of the United States after an exhaustive research and great deliberation. But we are not left to speculation on this question, or in doubt as to the propriety of acting on that assumption; for the Court of Appeals, in the case of People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303, has, in part, at least, followed, and, we think, fully approved, of the doctrine of Counselman v. Hitchcock, supra. The opinion in the Taylor Case, after quoting the provisions of the Federal and State Constitutions to which we have referred, and the similar provision incorporated in the Code of Criminal Procedure (section 10, Code Cr. Proc.), proceeds:

"These constitutional and statutory provisions have been regarded as safeguards of civil liberty, quite as sacred and important as the writ of habeas corpus or any of the other fundamental guaranties for the protection of personal rights. When a proper case arises, they should be applied in a broad and liberal spirit, in order to secure to the citizen that immunity from every species of self-accusation implied in the brief, but comprehensive, language in which they are expressed. The security which they afford to all citizens against the zeal of the public prosecutor, or public clamor for the punishment of crime, should not be impaired by any narrow or technical views in their application to such a state of facts as appears from the record before us. The right of a witness to claim the benefit of these provisions has frequently been the subject of adjudication in both the federal and state courts. The principle established by these decisions is that no one shall be compelled, in any judicial or other proceeding against himself, or upon the trial of issues between others, to disclose facts or circumstances that can be used against him as admissions tending to prove his guilt or connection with any criminal offense of which he may then or afterwards be charged, or the sources of which or the means by which evidence of its commission or of his connection with it may be obtained."

The court then construe the Counselman Case and say concerning the decision:

"The court, sustaining the privilege contended for in behalf of the witness, held that the object of the constitutional provision was to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime, and its meaning was that a witness is protected from any compulsory disclosure of the circumstances of his offense, or the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him. This conclusion was reached, although there is a general federal statute providing that in such cases the testimony given by the witness at the investigation shall not be given in evidence against him, subsequently, in any civil or criminal proceeding. Rev. St. U. S. § 860 [U. S. Comp. St. 1901, p. 661]. It seems that in such case nothing short of absolute immunity from prosecution can take the place of the privilege by which the law affords protection to the witness."

We are therefore of opinion that the case of People v. Kelly, supra, is no longer a controlling authority, and that the doctrine of the Supreme Court of the United States should be followed. It necessarily follows that section 342 of the Penal Code is not sufficiently broad, in that it does not grant absolute immunity to the witness from

prosecution for the crime which he believes his evidence will tend to disclose, and therefore the relator was privileged from answering, unless it is manifest beyond a reasonable doubt that the answers could not aid the prosecution in proving any link in the chain of evidence necessary to convict the relator of any crime on a criminal prosecution against him thereafter. People ex rel. Taylor v. Forbes, 143 N. Y. 230, 231, 38 N. E. 303; 1 Wharton on Evidence (3d Ed.) § 536; State ex rel. Attorney General v. Simmons Hardware Co., 109 Mo. 118, 18 S. W. 1125, 15 L. R. A. 676. The law limits this privilege to the protection of the witness or party, and, while he should not be permitted to make use of it in bad faith, yet whether his answers in a given case will tend to incriminate him or not must rest largely with the witness himself. Speaking on this point, Judge O'Brien, writing for the court in People ex rel. Taylor v. Forbes, supra, said:

"The witness, who knows what the court does not know, and what he cannot disclose without accusing himself, must in such cases judge for himself as to the effect of his answer, and if, to his mind, it may constitute a link in the chain of testimony sufficient to convict him, when other facts are shown, or to put him in jeopardy, or subject him to the hazard of a criminal charge, indictment, or trial, he may remain silent. While the guilty may use the privilege as a shield, it may be the main protection of the innocent, since it is quite conceivable that a person may be placed in such circumstances, connected with the commission of a criminal offense, that, if required to disclose other facts within his knowledge, he might, though innocent, be looked upon as the guilty party. * * * The weight of authority seems to be in favor of the rule that the witness may be compelled to answer when he contumaciously refuses, or when it is perfectly clear and plain that he is mistaken, and that the answer cannot possibly injure him, or tend in any degree to subject him to the peril of a prosecution. The courts have recognized the impossibility in most cases of anticipating the effect of the answer. Where it is not so perfectly evident and manifest that the answer called for cannot incriminate as to preclude all reasonable doubt or fair argument, the privilege must be recognized and protected."

In the case at bar there is nothing to indicate bad faith on the part of the relator. He has manifested a willingness to answer any question relating to a period when the statute of limitations would be a bar to a criminal prosecution against him. If he should be prosecuted for gambling at Canfield's, one very important link in the chain of evidence would be to show that he was there, when he was there, and who else were there at the same time. This is the evidence sought to be elicited by the questions which he declined to answer. Had it been elicited, it might disclose sources of evidence for the people upon which to found a criminal prosecution against the relator. It is not contended by the learned assistant district attorney that the questions which the relator declined to answer were of such a preliminary character that they would not and could not elicit information which might aid the people in a criminal prosecution against the relator; and, it being apparently the desire of both parties to obtain a decision on the merits, adjudicating whether the relator may be compelled to fully disclose his knowledge, rather than whether he has technically become liable to a criminal prosecution, the only purpose of which is to coerce him into answering, it is not necessary for us to give that point special consideration.

Having reached the conclusion that the witness was privileged from answering, we deem it proper to base our decision upon that broad ground, inasmuch as a decision on that point is desired by both parties and goes to the real merits; and we refrain from expressing any opinion on the other questions which would otherwise require consideration at our hands.

It follows, therefore, that the order should be reversed, the writ sustained, and the relator discharged.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

McLAUGHLIN, J. (dissenting). A justice of the court of special sessions of the city of New York, upon information laid before him to the effect that one Canfield had been, between the 1st day of January, 1901, and the 1st day of December, 1902, conducting a gambling house at No. 5 East Forty-Fourth street, in said city, issued a subpœna, addressed to the relator, in obedience to which he attended before the justice, and, after testifying that he knew Canfield, but had not been in the premises referred to prior to December, 1899, was asked the following questions: "Q. Have you ever been there in your life?" "Q. Have you ever been in the premises No. 5 East Forty-Fourth street, in the city and county of New York?" which he refused to answer upon the ground that his answers might tend to incriminate him. By reason of such refusals, proceedings were taken to punish him for a criminal contempt, and to that end a warrant was issued, he was arrested and taken into custody, and thereupon sought, by writs of habeas corpus and certiorari, to obtain his freedom upon the ground that his arrest and restraint were illegal. The Special Term dismissed the writs, and remanded the relator to the custody of the officer who made the arrest, and this court is about to reverse that order and direct that the relator be discharged.

I am unable to concur in that conclusion—First, because the question discussed in the prevailing opinion is not before us; and, second, if it were, the conclusion reached is in conflict with the decision of the Court of Appeals, which it is the duty of this court to follow.

The charge which was being investigated was that Canfield, during the time specified, had conducted a gambling house at the place named. The questions asked, and which the relator refused to answer, were whether he had ever been in that house; and, if it be assumed that his answers would have been in the affirmative, I do not see how it could be said that the same could by any possibility have tended to convict the defendant of a crime. In answer to this, it is suggested—not by counsel—that, if the relator should be prosecuted for gambling at this place, an important link in the chain of evidence on the part of the prosecution would be to show that he was present at the time he gambled. Of course, it goes without saying that he could not gamble unless he was present; but it might just as well be urged that answers to questions of whether he had ever been in the city of New York, the state of New York, or the United States would tend to incriminate him, as it can that the answers to the questions which were put to him would; and we take it no one would

seriously contend, if such questions were asked, he should be excused from answering on the ground named. Whether a witness shall be excused from answering a question upon the ground that his answer may tend to incriminate him always depends, as I understand the law, upon whether the court can see, upon all the facts then before it, not only that the privilege claimed is made in good faith, but that the answer may tend to do what the witness claims it will. This must be so; otherwise, a witness, either in a civil or criminal proceeding, could, simply by claiming the privilege, excuse himself from testifying. There is nothing in this record which shows that the privilege was claimed in good faith, nor, as already indicated, that the answers to the questions could by any possibility have a tendency to do what the witness claimed they would.

If, however, it be assumed that, had answers been given to the questions, the same would have tended to incriminate the relator, I am nevertheless of the opinion that he was not excused from testifying. To hold otherwise is to entirely disregard section 342 of the Penal Code. This section refers to gambling and provides that:

"No person shall be excused from giving testimony upon any investigation or proceeding for a violation of this chapter. upon the ground that such testimony would tend to convict him of a crime; but such testimony cannot be received against him upon any criminal investigation or proceeding."

But it is suggested that this section is in conflict with article 1, § 6, of the Constitution, which is that:

"No person can be compelled in any criminal case to be a witness against himself."

The suggestion would require very serious consideration, were it not for the fact that the Court of Appeals, in People ex rel. Hackley v. Kelly, 24 N. Y. 74, held otherwise. The question presented in the Hackley Case was quite similar to this one. There the relator had been committed for a contempt of court in refusing to answer questions put to him relating to a charge of bribery. His refusal was put upon the ground that the questions put to him tended to incriminate him, and the statute under which it was sought to punish him for contempt by reason of such refusal was almost identical with section 342 of the Penal Code, hereinbefore quoted. There the statute (section 14, c. 539, Laws 1853) provided that:

"Every person offending against either of the preceding sections of this article shall be a competent witness against any other person so offending, and may be compelled to appear and give evidence before any magistrate or grand jury, or any other court, in the same manner as other persons; but the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying."

It was there urged, as here, that the immunity offered was insufficient to satisfy the constitutional provision that no person should be compelled in a criminal case to be a witness against himself, inasmuch as there might be elicited from the witness matters which would furnish a link whereby the prosecution might be enabled to secure other evidence by means of which to convict the witness of a crime; but the court held that this did not render the statute unconstitutional. This case was followed in Lathrop v. Clapp, 40 N. Y. 328,

100 Am. Dec. 493, approved in People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851, and followed by this court in Gilpin v. Daly, 59 Hun, 413, 13 N. Y. Supp. 390.

Indeed, it is conceded in the prevailing opinion that this decision of the Court of Appeals is in point and decisive of the question here presented, unless the same has been overruled by that court; and the claim is made that it has, in People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303. That case will be read in vain to find a suggestion in it that the court intended to overrule the Hackley Case. On the contrary, the only reference to the Hackley Case in the opinion delivered is where the same is cited with approval. It is true there are expressions in the opinion in the Taylor Case antagonistic to the views expressed in the opinion in the Hackley Case; but I cannot believe that the court of last resort in this state would overrule an important decision of its own, which had been recognized as the law of the state for upward of 30 years, without saying so in express terms. Not only this, but the question presented in the Taylor Case was radically different from the question presented in the Hackley Case. In the former the question determined was that where a witness stated that his answers might have a tendency to incriminate him, and it could be seen that the claim was made in good faith, and that the answers to the questions might have a tendency to do what the witness claimed, then the court, in the absence of a statute preventing the use of his testimony against him, was bound to excuse him from answering the questions. Here there is a statute, as already indicated, quite similar to the one under discussion in the Hackley Case. I do not think the Hackley Case has been overruled; and, if I am correct in this, then it is the duty of this court to follow it.

For these reasons I am unable to concur in the opinion of Mr. Justice LAUGHLIN. I think the order appealed from is right, and should be affirmed.

HATCH, J., concurs.