CATE BOTTJER, Respondent, v. SUPREME COUNCIL, AMERICAN LEGION
OF HONOR, Appellant.

*Fraternal benefit insurance association — by-law adopted after the issue of a certifi-
cate held not to be authorized in respect thereto and not to be retroactive.*

A by-law of a fraternal benefit insurance association providing, " In case the mem-
ber shall die by suicide, sane or insane, or by alcoholism, or by legal execution
for crime, there shall only be due and payable to the beneficiary under the
benefit certificate the then value of the certificate, to be ascertained on the basis
of the proportion of time that the member had been in the order, as it varies to
his life expectancy at the time of the member's admission, as fixed by the
American expectation table," is not binding upon a person who became a
member of the association prior to the enactment of the amendment and who
assumed the obligation " to conform in all respects to the by-laws, rules and
usages of the order now in force or which may hereafter be adopted by the
order," for the reason that, with respect to such a member, the association had
no power to enact the by-law, and for the further reason that such amendment
was not retroactive in its operation.

APPEAL by the defendant, Supreme Council, American Legion of
Honor, from a judgment of the Supreme Court in favor of the
plaintiff, entered in the office of the clerk of the county of Kings
on the 25th day of March, 1902, upon the verdict of a jury ren-
dered by direction of the court.

*Henry A. Powell, Alfred J. Carr* and *Laurence G. Goodhart,*
for the appellant.

*James D. Bell,* for the respondent.

HIRSCHBERG, J.:

The plaintiff sues as the beneficiary named in a benefit certificate
issued by the defendant to her husband, which entitled her to
the sum of $5,000 upon his death. Between the time of the issuing
of the certificate and the death of her husband the defendant
adopted an amendment to its by-laws, as follows : " In case the
member shall die by suicide, sane or insane, or by alcoholism, or by
legal execution for crime, there shall only be due and payable to the
beneficiary under the benefit certificate the then value of the certifi-
cate, to be ascertained on the basis of the proportion of time that
the member had been in the order, as it varies to his life expect-

ancy at the time of the member's admission, as fixed by the American expectation table." The deceased became a member in 1886, this amendment was adopted in 1899, and he died in 1900. The defendant claimed that he committed suicide, and on the motion of each party at the close of the case for the direction of a verdict, the court in directing a verdict for the plaintiff, wrote that two questions were presented, viz., the power of the defendant to make the by-law in question in so far as it tended to impair existing obligations, and the retroactive operation of the amendment. The decision was rested upon the want of power, and the opinion of the learned trial justice is here appended.* We agree with the con-

---

* The following is the opinion referred to:

SPENCER, J.:

Fred Bottjer, plaintiff's husband, on or about December 13, 1886, at the city of Brooklyn, N. Y., became a beneficial member of one of the subordinate councils of the defendant, a fraternal association organized under the laws of the State of Massachusetts for the purpose, among other things, as stated in its constitution: (4) " To establish a Fund for the relief of sick and distressed beneficial members." (5) " To establish a Benefit Fund, from which, on the satisfactory evidence of the death of a beneficial member of the order who has complied with all its lawful requirements, a sum not exceeding Five thousand dollars shall be paid to the family, orphans or dependents as the member may direct."

Among the obligations assumed by the plaintiff's husband on becoming a member is the following:

" I agree to make punctual payment of all dues and assessments for which I may become liable and to conform in all respects to the laws, rules and usages of the order now in force or which may hereafter be adopted by the same."

In due course the defendant issued to said Bottjer and to the plaintiff a certificate providing, among other things, as follows:

"This is to certify that Fred Bottjer is a Companion of the American Legion of Honor. * * * In consideration of the full compliance with all the by-laws of the Supreme Council A. L. of H. now existing or hereafter adopted and the conditions herein contained, the Supreme Council A. L. of H. hereby agrees to pay Cate Bottjer, wife, Five thousand dollars upon satisfactory proof of the death while in good standing upon the books of the Supreme Council, of the Companion herein named."

Fred Bottjer died May 31, 1900, while in good standing in the order, and the plaintiff, his widow, brings this action to recover the amount named in the certificate.

The defendant resists on the ground that Bottjer committed suicide, and that by virtue of the by-laws of the defendant now in force the beneficiaries of members so dying may recover only a certain specified proportion of the amount named in their certificates.

clusion reached upon the question discussed. The recent case of *Weber* v. *Supreme Tent of K. of M.* (172 N. Y. 490) may be noted in that connection.

We are also of opinion that the amendment was not retroactive.

It is conceded that at the time Bottjer became a member of the defendant order no such by-law was in existence, but the defendant has alleged and proven that in October, 1899, the supreme council located in Boston, Mass., under the power reserved to it in the constitution to alter or amend the laws governing the benefit fund, adopted a new by-law, which, among other things, provides as follows:

"In case the member shall die by suicide, sane or insane, or by alcoholism, or by legal execution for crime, there shall only be due and payable to the beneficiary under the benefit certificate the then value of the certificate to be ascertained on the basis of the proportion of time that the member had been in the order as it varies to his life expectancy at the time of the member's admission as fixed by the American expectation table."

The questions thus presented to this court are: *First*, whether the foregoing by-law was retroactive in its operations; and, *second*, whether the defendant had the power by such legislation to impair pre-existing obligations. Both of these questions are involved in serious difficulty, and while I am inclined to the opinion that the by-law under consideration is not retroactive, I prefer to rest the decision of this case upon the want of power in the defendant. It is clear, I think, from the decisions in this State that under a contract, such at this, there is some limitation to the powers of the defendant to affect by legislation the rights of its members and of the beneficiaries named in their membership certificates. It may be difficult to define the line of limitation, but that such a line exists is, I think, clearly indicated.

Thus in *Kent* v. *Quicksilver Mining Co.* (78 N. Y. 159, 182) the Court of Appeals says: "All by-laws must be reasonable and consistent with the general principles of the laws of the land, which are to be determined by the courts, when a case is properly before them. * * * A by-law may regulate or modify the constitution of a corporation, but cannot alter it. * * * The alteration of a by-law is but the making of another upon the same matter. If the first must be reasonable and in accord with principles of law, so must that which alters it. If then the power is reserved to alter, amend or repeal, and that reservation enters into a contract, the power reserved is to pass reasonable by-laws, agreeable to law. But a by-law that will disturb a vested right is not such. * * * And it differs not when the power to make and alter by-laws is expressly given to a majority of the stockholders, and that the obnoxious ordinance is passed in due form."

In *Poultney* v. *Bachman* (31 Hun, 49) the plaintiff became a member of the defendant society in 1849, at a time when its by-laws provided that sick members should receive a benefit of four dollars per week. In 1875 the plaintiff was taken sick and received such benefit until July, 1879, when the by-laws were amended reducing such benefit to one dollar a week to such members as had

It certainly is not so in express terms, there being no statement to the effect that the by-law as amended was to apply to the benefit certificates issued and outstanding at the time of the adoption of the amendment. The general rule is that all enactments are to be con-

been sick for twelve months. The plaintiff disputed the right of the defendant order to make the change, and brought suit for the larger amount; and it was held that the society had the legal right to make the change.

Also in *Hutchinson* v. *Supreme Tent, etc.* (68 Hun, 355; 22 N. Y. Supp. 801), the plaintiff became a member of the defendant order under an agreement similar to the one here. The constitution of the defendant at that time provided that upon the permanent disability of a member he should receive an advance benefit of one-half of the amount named in his certificate; and it was held that the society had the right to amend the constitution by reducing such advance benefit to one-tenth part of the amount named in the certificate.

In *Roberts* v. *Cohen* (60 App. Div. 259) the deceased became a member of the defendant society in 1890. He was unmarried, and in his application directed that upon his death $1,000 of the benefit fund should be paid to his daughter and $1,000 to Lily Cohen, a friend. In 1894 he married the plaintiff, who continued to be his wife until his death in 1899. In March, 1898, a new by-law was adopted as follows: "Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall in every instance be one or more members of his family, an affianced wife, or some one related to him by blood, or who shall be dependent upon him." It also provided that in case a member died without naming a beneficiary, his widow should take the fund. The deceased was notified of the change, and that his beneficiary, Lily Cohen, did not come within the new regulations, and he was asked to make a redesignation, which he never did. In determining what effect, if any, this amendment had upon the rights of Lily Cohen, the court made use of the following language: "He had the right at the time to designate as appointee the defendant Lily Cohen, and we fail to see how, without the consent of the member, this contract, which was valid at its inception, could be impaired or destroyed either by the Legislature or the society. * * * The by-laws of a society must be fair and equitable and consistent with its charter. Whether, under a right reserved to alter them, a society can impair or destroy a contract valid when made, is open to question. * * * A member having the right could change the beneficiary, but his failure to exercise such privilege, whether from disinclination or neglect, did not give the society the right to make another designation without his consent, unless such right was expressly conferred upon the society."

In *Shipman* v. *Protected Home Circle* (66 App. Div. 448) the court at Trial Term, in speaking of the reservation of power of the defendant order to affect the rights of its members by subsequently enacted by-laws, says: "It may well be suggested that this reservation to amend its by-laws, with reference to which the member promised to comply, referred to other matters ordinarily incident to the management of such associations, and not to such a vital matter as impaired

sidered prospective in their operation unless the contrary intention is either declared or clearly manifested. (*O'Reilly* v. *Utah, Nevada & Cal. Stage Co.*, 87 Hun, 406; *Isola* v. *Weber*, 147 N. Y. 329.) The precise question appears to have been decided adversely to the

its liability and limited the risk upon which the original certificate of membership was obtained. I am inclined, however, to the opinion that the defendant had the right to make this change in its by-laws and that it could have limited its liability, even as regards such of its members as had become members of the defendant order before the change was made."

In *Feierstein* v. *Supreme Lodge Knights of Honor* (69 App. Div. 53; 74 N. Y. Supp. 558) the certificate was issued to the plaintiff's husband in January, 1896, she being named as beneficiary therein. In June of the same year a by-law was adopted as follows: "The order will not pay the benefits of those members who commit suicide." In July following the plaintiff's husband committed suicide. The court, in speaking of the nature of the plaintiff's rights under the certificate, says: "Under the certificate herein the rights of the plaintiff had become vested before the by-law was passed."

Without referring to the decisions in other States, which are by no means harmonious, I am inclined to the view that under the decisions of this State the power reserved to the defendant herein to affect its members by subsequent legislation did not extend to contract rights existing at the time of such legislation. In the exercise of its power the supreme council might by appropriate legislation regulate the amount of weekly or monthly benefits which sick or distressed members should, from time to time, receive, from the fund being maintained for that purpose, as might be reasonable in the due and orderly administration of its affairs; but in the exercise of this power it could not impair or destroy the vested rights belonging to such members or their beneficiaries named in their certificates of membership. The constitution in effect provides that upon the death of plaintiff's husband the plaintiff shall receive a sum not exceeding $5,000, and the certificate issued to them names that sum without qualification or limitation. For thirteen years and over the plaintiff's husband continued to pay his dues and assessments in order to establish the fund from which this payment to his widow was to be made. Her right to claim its payment became vested in her as soon as the contract was made in her behalf, a right not to be defeated or impaired, except by a subsequent agreement between the parties to the original agreement. The enactment of a subsequent by-law does not constitute such an agreement.

It may be true that the society under its reserve power to legislate might impose conditions upon the beneficiaries named in the certificates of its members, as might be necessary for the proper administration of its affairs, but in so doing it had not the power to impair the contract rights of those beneficiaries or confer them upon others.

The agreement on the part of plaintiff's husband "to conform * * * to the laws, rules and usages of the order now in force or which may hereafter be adopted" is not an agreement upon his part to surrender his contract rights or

contention of the appellant where a retroactive effect was sought to be given to a similar by-law or amendment in *Shipman* v. *Protected Home Circle* (66 App. Div. 448) and *Feierstein* v. *Supreme Lodge* (69 id. 53).

those of the beneficiary named in his certificate of membership to the arbitrary will of the governing body of the society, any more than the oath of allegiance and obedience to the laws of the land is a surrender on the part of the citizen of his contract rights to the arbitrary will of the Legislature.

As was well said in *Roberts* v. *Cohen (supra)*, "The by-laws of a society must be fair and equitable and consistent with its charter." The by-law under consideration does not, to my mind, satisfy any one of these requirements. To determine this question it is necessary to keep in mind the avowed object of the association, viz., to furnish assistance to its sick and distressed members and make pecuniary provision for the families and dependents of such as shall die. It assumes equal obligations toward its members and to the beneficiaries named in their certificates, and it may not solely under its general powers of legislation inject into its contracts with them a condition or penalty not fairly within the contemplation of the parties at the time their relations were created.

This is what the by-law under consideration attempts to accomplish. It contemplates the retention of members who may become either lunatics, inebriates or criminals, and provides for the collection from them of the same assessments and stated dues for the establishment of its funds as in the case of other members, until such sick or vicious members shall be overtaken by the probable consequences of their diseases or sins, and then, because of such consequences, and for no other reason, imposes upon their families and dependents, whose misfortunes the association was bound to mitigate rather than aggravate, a penalty by the impairment of their rights under the agreement made in their behalf.

Nor can legislation on the part of this society be regarded as reasonable which arbitrarily consigns such of its members as are so unfortunate as to become victims of insanity to the same category with those who are justly electrocuted for their crimes. The environment of the defendant's supreme council is inadequate to illuminate the intellectual obtuseness that creates such a classification. Any legislation on the part of the defendant society, which directly or indirectly accomplishes such results, must be regarded as violative of the spirit and terms of its constitution and beyond the scope of the legislative powers of its governing body.

I, therefore, conclude that the by-law adopted in October, 1899, was invalid as against such of its members who stood in the same relation to it as did the husband of the plaintiff, and that it was ineffectual to impair or destroy the vested rights of the plaintiff in the contract then existing between the defendant and her husband for her benefit. It follows that the motion made by the plaintiff's counsel at the close of the case must be granted and a verdict directed for the plaintiff as of February 6, 1902, for $5,525 principal and interest, together with costs and an additional allowance of five per cent upon the recovery.

Let judgment be entered accordingly.

Other questions have been presented, but in the view taken their consideration becomes unnecessary.

The judgment should be affirmed.

GOODRICH, P. J., BARTLETT, WOODWARD and JENKS, JJ., concurred.

Judgment affirmed, with costs.