(96 App. Div. 201.)

PEOPLE ex rel. LEWISOHN v. COURT OF GENERAL SESSIONS OF THE.
          PEACE IN AND FOR NEW YORK COUNTY et al.

(Supreme Court, Appellate Division, First Department.   July 13, 1904.)

1. WITNESSES—EVIDENCE AGAINST SELF—CONSTITUTION.
     Const. art. 1, § 6, declares that no person shall be compelled in any
     criminal case to be a witness against himself.   Pen. Code, § 342, as
     amended by Laws 1904, c. 649, relative to gaming, provides that no person
     shall be excused from attending and testifying upon an investigation or·
     trial for a violation of any of the provisions of the chapter upon the ground
     that the evidence required may tend to convict him of a crime or to sub-
     ject him to a penalty or forfeiture, but that no person shall be prosecuted.
     or subjected to any penalty or forfeiture on account of any transaction·
     concerning which he may so testify or produce evidence, and that no tes-
     timony so given or produced shall be received against him upon any crim-
     inal investigation or proceeding.   Held, that a witness before the grand·
     jury to testify in a proceeding against one for gaming cannot refuse to·
     give evidence on the ground that it would incriminate him, the statute·
     giving complete immunity.

2. SAME—RETROACTIVE EFFECT OF STATUTE.
     Pen. Code, § 342, as amended by Laws 1904, c. 649, applies to proceed-
     ings, commenced after its passage, founded on an alleged offense prior to·
     such amendment.

     McLaughlin and Laughlin, JJ., dissenting.

     Certiorari to review the commitment of Jesse Lewisohn for contempt
in refusing to answer questions propounded by the grand jury.   Writ
dismissed.

     See 68 N. E. 353; 80 N. Y. Supp. 816.

     Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, INGRAHAM, and LAUGHLIN, JJ.

     Alfred Lauterbach, for appellant.
     Howard S. Gans, for respondent.

     INGRAHAM, J.   The relator, a witness before the grand jury· of
the county of New York to testify in a proceeding against one Can-
field, who was charged with a violation of section 344 of the Penal
Code, was asked whether he had ever been in the premises No. 5 East
Forty-Fourth street, in the city of New York, whether he had seen
the said Canfield in the said premises No. 5 East Forty-Fourth street,
in the city of New York, and whether he had played roulette there.
These questions the relator declined to answer, and, when directed by
the foreman of the grand jury to answer, he persisted in his refusal.
The grand jury then made a presentment to the Court of General Ses-
sions, setting forth the refusal of the relator to answer the questions;
and the relator, then present in court, was asked in the presence of the
grand jury whether or not he would answer the questions propounded
to him by the grand jury.   In reply, the relator declined to withdraw
the refusal already made before the grand jury, and stated that he
would not, if recalled, answer the questions; whereupon the court
ordered and adjudged that the relator was guilty of a criminal con-
tempt of court in having refused to answer the legal and proper in-
terrogatories addressed to him by the grand jury during the sitting of

the court in its immediate view and presence, and further adjudged that the relator be imprisoned in the common jail of the county of New York for a period of 15 days, unless he should purge himself of the contempt. The relator, therefore, presented a petition to the Supreme Court asking for a writ of certiorari to review this commitment for contempt.

There is annexed to this petition a transcript of the proceeding before the grand jury, from which it appears that the relator refused to answer, on advice of counsel, upon the ground, among others, that his answer might tend to criminate or degrade him, or subject him to a penalty or forfeiture, and he claimed his constitutional rights and privileges. By the return to the writ of certiorari it appears that the district attorney of the county of New York appeared before the grand jury and laid before them an information charging that one Richard A. Canfield used certain premises, No. 5 East Forty-Fourth street, in the city of New York, for gambling, and allowed to be played in said premises certain gambling and banking games, where money or property depended upon the result, which were maintained upon the said premises for the purpose of making a profit for said Canfield. Upon that information the relator was subpœnaed as a witness before the grand jury and interrogated in relation to his knowledge of the premises, and refused to answer the questions addressed to him by the grand jury as to whether he had ever been upon the premises, had ever seen Canfield upon the premises, and whether he had ever played roulette, one of the games played there.

This information was presented to the grand jury under chapter 9 of the Penal Code. Section 344 of that chapter provides that "a person who is the owner, agent or superintendent of a place, or of any device, or apparatus, for gambling; or who hires, or allows to be used a room, table, establishment or apparatus for such a purpose," is a common gambler, and punishable by imprisonment for not more than two years, or by a fine not exceeding $1,000, or both. Section 342 of the Penal Code, as amended by chapter 649 of the Laws of 1904, provides that:

"No person shall be excused from attending and testifying * * * before any court or magistrate, upon an investigation, proceeding or trial, for a violation of any of the provisions of this chapter, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."

Upon this appeal the objections taken are that chapter 649 of the Laws of 1904, amending section 342 of the Penal Code, is unconstitutional; and that, if constitutional, the section as amended does not apply to an investigation into a violation of chapter 9 of the Penal Code, committed before the act of 1904 became a law.

The objection to the constitutionality of the act is based upon section 6 of article 1 of the Constitution, which provides that no person shall "be compelled, in any criminal case, to be a witness against

himself," and the relator insists that, by compelling him to answer the questions propounded to him, he is compelled to be a witness against himself in a criminal proceeding. The right of a witness to refuse to answer a question, upon the ground that it would tend to criminate him or subject him to a penalty, or to disgrace or degrade him, may be protected by a constitutional provision; but it is within the power of the Legislature (except so far as the provisions of the Constitution may apply) to determine the extent and limit of the personal right of a witness. The Legislature has power to require a witness to answer any question, except so far as he is protected by the Constitution; and it follows that, if the answers to the questions asked cannot in any way be used against the witness in a criminal proceeding, the provisions of the Constitution are not violated.

For a refusal to answer these same questions upon a former proceeding against Canfield, this relator was committed for contempt, and upon a review of that commitment this court held, in People ex rel. Lewisohn v. O'Brien et al., 81 App. Div. 51, 80 N. Y. Supp. 816, that under section 342 of the Penal Code, as it existed before the amendment of 1904, the relator could not be compelled to answer questions as to his relations with Canfield; and that therefore the court was not justified in requiring him to answer questions, or in adjudging him guilty of contempt for his refusal; and this was affirmed by the Court of Appeals (176 N..Y. 253, 68 N. E. 353). Judge Bartlett, in delivering the opinion of that court, says, "The relator seeks to justify his refusal to answer under article 1, § 6, of the Constitution of this state, which provides that 'no person shall be compelled, in any criminal case, to be a witness against himself,'" and that the provision of section 342 of the Penal Code, as it then existed, did not afford him full protection. The court then, after discussing the case of People ex rel. Hackley v. Kelly, 24 N. Y. 74, and the decision of the Supreme Court of the United States in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, followed the decision of the Supreme Court of the United States, and construed this constitutional provision as meaning, not only that a person should not be compelled to be a witness against himself in a criminal proceeding, but that its object was to insure a person from being compelled to give testimony as a witness in any investigation which might tend to show that he had committed a crime; that a provision in the statute that the evidence given by the witness should not in any manner be used against him in any court of the United States in any criminal proceeding was not coextensive with the constitutional provision; and that it was a reasonable construction of the provision that the witness is protected from being compelled to disclose the circumstances of his offense, or the sources from which or the means by which evidence of its commission or of his connection with it may be obtained or made effectual for his conviction, without using his answers as direct admissions against him. In discussing the case of Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, which involved the construction of an act of Congress of 1893 in reference to producing books and papers and testifying before the Interstate Commerce Commission, where it was held that the

statute of 1893 was coextensive with the Constitution in the immunity that it afforded the witness, and that he was not deprived of his constitutional right thereby, and must answer the question, the court say:

"It is doubtless true that cases may arise where the mere fact of the witness asserting that to answer the question would tend to criminate him would not be conclusive. Where the court can see that the refusal to answer is a mere device to protect a third party, and that the witness is in no possible danger of disclosing facts that would lead to his own indictment and conviction, an answer may be insisted upon. * · * * This distinction is to be kept in mind as to the attitude of a witness before the court where complete statutory protection, coextensive with the constitutional provision, exists, and where it is lacking. In the former situation the witness is deprived of his constitutional right of refusing to answer. The point was decided by this court in People v. Sharp, 107 N. Y. 427 [14 N. E. 319, 1 Am. St. Rep. 851], and by the Supreme Court of the United States in Brown v. Walker, 161 U. S. 591 [16 Sup. Ct. 644, 40 L. Ed. 819]. We adhere to the point thus decided."

Judge Gray, in a concurring opinion, says:

"If the interests of the people are deemed to require it, it is, of course, quite competent and proper for the legislative body to provide for an exemption of the witness from liability to prosecution, as broad in its effect as is the constitutional privilege."

We think there is no doubt but that this statute does give the witness complete immunity from prosecution for any crime in relation to the acts about which he was interrogated, and if he has this immunity it necessarily follows that compelling him to answer in relation to the crime, although he was directly connected with it, does not compel him to be a witness against himself in a criminal proceeding. The statute says that he shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon a criminal investigation or proceeding. The effect of such a provision was so fully and satisfactorily discussed by the Supreme Court of the United States in Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, that further discussion is unnecessary. The statute under consideration in that case was almost identical with the section of the Penal Code as amended by the act of 1904, while the provision of the Constitution of the United States is the same as that of the Constitution of the state of New York, and it was held that such a statute granted complete immunity, and that compelling a witness to answer where so protected was not a violation of his rights secured to him by the Constitution. And all the opinions delivered in the Court of Appeals upon the question presented under this section of the Penal Code before its amendment recognized and approved the determination arrived at by the Supreme Court of the United States. 176 N. Y. 253, 68 N. E. 353. It follows, therefore, that the relator was not justified in refusing to answer because the protection afforded him by the Penal Code was not sufficient.

We do not think that the application of this section of the Penal Code to a proceeding commenced after its passage is giving it a retro-

active effect. The section as amended applies only to the right of a witness testifying or producing books, papers, or other documents before a court or magistrate upon any investigation, proceeding, or trial for a violation of the provisions of the chapter of the Penal Code of which the section is a part. It relates to a rule of evidence, and does not bear at all upon the commission of the offense or the evidence necessary to prove it. It acts not upon the person charged with the offense, but upon a witness called to testify in a judicial proceeding in relation to it. The person charged with the crime is not a party to this proceeding, nor is the person charged with the crime entitled to object to a question asked a witness upon the ground that the answer would tend to incriminate the witness. This privilege is one purely personal to the witness, and his right to refuse to testify depends upon the law in force at the time he is called and examined. To justify his refusal to answer, it must appear that at the time of the examination he was then entitled to exercise his personal privilege, and, if he was not, it was the duty of the court to require him to answer, and to enforce obedience to its direction by proceedings for a contempt. We have come to the conclusion, therefore, that this relator was bound to answer, that he was not justified in disobeying the order of the court directing him to answer, and for that reason he was properly punished for his contempt.

It follows that the writ must be dismissed, and the proceedings affirmed, with costs.

VAN BRUNT, P. J., concurs in result.

PATTERSON, J. I concur in the result of Mr. Justice INGRAHAM'S opinion, on the ground that the act of 1904, amending section 342 of the Penal Code, relates to evidence. It is conceded that a statute relating to evidence, or matters of procedure only, affects pending actions as well as those brought subsequently to the passage of such a statute. The personal right of the witness here is to be protected from prosecution, and he is abundantly protected by the amendment of 1904. I agree with Mr. Justice INGRAHAM in his view of the character of this amendment.

McLAUGHLIN, J. (dissenting). The relator was adjudged guilty of a criminal contempt because he refused to answer certain questions put to him by the foreman of the grand jury of the county of New York. By writ of certiorari he asks this court to review, and, if error were committed, to reverse, the action of the court below. The grand jury, at the time the questions were asked, was investigating a charge which had been made against one Canfield, to the effect that between the 1st day of January, 1901, and the 1st day of December, 1902, he had violated section 344 of the Penal Code, which provides, among other things, that a person who is the owner, agent, or superintendent of a place, or of any device or apparatus, for gambling; or who hires or allows to be used a room, table, establishment, or apparatus for such purpose, is a common gambler, and punishable by imprisonment for not more than two years, or by a fine not ex-

ceeding $1,000, or both. The questions which were asked the relator were whether he had ever been in premises No. 5 East Forty-Fourth street, in the city of New York, whether he had ever seen Canfield in said premises, or whether he had played roulette there. His refusal to answer was placed upon the ground that his answer might tend to incriminate him or subject him to a penalty or forfeiture. Some months before, the relator had been before another grand jury, when similar questions were asked, which he refused to answer, and for which he was then adjudged guilty of a criminal contempt, but on appeal to this court it was held that he was justified in refusing to answer, inasmuch as the section of the Penal Code under which it was sought to obtain the evidence did not give him complete immunity (81 App. Div. 51, 80 N. Y. Supp. 816), which decision was subsequently affirmed by the Court of Appeals (176 N. Y. 253, 68 N. E. 353). After the decision of the Court of Appeals, the section of the Penal Code referred to was amended by chapter 649 of the Laws of 1904, by which, it seems, complete immunity is now granted to a witness who is compelled to testify or furnish evidence in pursuance of it. Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819. The court below held, and a majority of this court is about to affirm the decision, that the relator—complete immunity having been given by the section of the Code as amended—was guilty of a criminal contempt in refusing to answer, notwithstanding the fact that the amendatory act was passed subsequent to the alleged commission by Canfield of the crime which was the subject-matter of the investigation.

I am unable to concur in this view. To do so requires us to hold that the act of 1904 has a retroactive effect, when there are no words in it from which even an inference can be drawn that the Legislature ever intended it to apply to past transactions. A cardinal rule relating to the construction of statutes is that they are not to have a retroactive effect unless the Legislature so intended, and such intent is expressed in clear and unambiguous words. This rule was tersely stated in O'Reilly v. Utah, N. & C. S. Co., 87 Hun, 406, 34 N. Y. Supp. 358, where the court said:

"A law is never to have a retroactive effect unless its express letter or clearly manifested intention requires that it have such effect. If all its language can be satisfied by giving it prospective operation, it should have such operation only."

This case was recently cited with approval by this court in Bottjer v. Supreme Council, 78 App. Div. 546, 75 N. Y. Supp. 805, 79 N. Y. Supp. 684, the court saying:

"The general rule is that all enactments are to be considered prospective in their operation, unless the contrary intention is either declared or clearly manifested."

Indeed, this rule is of universal application, and applies to all statutes, except, possibly, those of a remedial character, or those relating exclusively to a method of procedure or a rule of evidence, and the one under consideration cannot be said to fall within any of those classes. Statutes designed to affect past transactions usually have

89 N.Y.S.—24

their origin in an improper motive, and rarely accomplish a public good. It is for this reason that they are mentioned with disfavor by text-writers, and are quite generally condemned by the courts when brought under judicial review. Thus, it was held that a statute which provided that all highways which had ceased to be traveled or used as such for six years should cease to be highways for any purpose applied only to highways that had ceased to be traveled for six years after the passage of the act (Amsbry v. Hinds, 48 N. Y. 57); that a constitutional provision to the effect that the amount recoverable in actions to recover damages for injuries resulting in death should not be subject to any statutory limitation did not apply to causes of action which accrued before the Constitution went into effect (Isola v. Weber, 147 N. Y. 329, 41 N. E. 704); that a statute prescribing new penalties for defaulting taxpayers only applied to defaults which accrued subsequent to the statute taking effect (Bartruff v. Remey, 15 Iowa, 257); one taking away the defense of usury in an action brought by the indorsee of a promissory note to whom the same was indorsed before maturity for value, without notice, applied only to notes made subsequent to the passage of the act (Bank v. Copeland, 7 Allen, 139); one requiring a new promise to be in writing to take a case out of the statute of limitations did not affect a promise made prior to the time the statute became a law (Richardson v. Cook, 37 Vt. 599, 88 Am. Dec. 622); so, a statute exempting a bank from the payment of interest on deposits was held not to apply to deposits made prior to the time the statute became a law (Hannum v. Bank of Tennessee, 1 Cold. 398); and a statute regulating the execution of wills was held not to apply to wills made prior to its passage (Taylor v. Mitchell, 57 Pa. 209). See, also, Sedgwick on Construction of Statutory and Constitutional Law, p. 160; Sutherland on Statutory Construction, p. 601; Endlich, Interp. Statutes, § 271 et seq.; Potter's Dwarris, Stat. 162. But it is unnecessary to multiply authorities, because the rule is general. It is well understood, and universally recognized, in this country and in England.

It is suggested in the prevailing opinion that the application of the section of the Penal Code, as amended by the act of 1904, to a proceeding commenced after its passage, is not giving it a retroactive effect. I think it is. "Every statute," says Mr. Justice Story in Society, etc., v. Wheeler, 2 Gall. 139, Fed. Cas. No. 13,156, "which * * * creates new obligations, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective." See, also, Dash v. Van Kleeck, 7 Johns. 477; Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648. That the act of 1904 creates a new obligation and imposes a new duty upon the relator, if it be held to apply to past transactions, cannot, as it seems to me, be seriously questioned. Prior to its passage he was under no obligation to answer the questions propounded to him, and the courts have so decided. Not only this, but the statute is in one sense penal in character, inasmuch as it makes him guilty of a crime (subdivision 6, § 143, of the Penal Code) for refusing to do that which previous to its enactment was justifiable. Full effect can be given to this act by holding it prospective, and not retrospective. A statute will never

be so construed as to give it a retroactive effect when it is capable of any other construction. New York & Oswego M. R. R. Co. v. Van Horn, 57 N. Y. 473; United States v. Heth, 3 Cranch. 399, 2 L. Ed. 479; Chew Heong v. United States, 112 U. S. 559, 5 Sup. Ct. 255, 28 L. Ed. 770; In re Tuller's Will, 79 Ill. 99, 22 Am. Rep. 164. There certainly is nothing in the act itself, as already said, to indicate an intent on the part of the Legislature that it was to be retroactive in its operation, and, when it is read in connection with section 719 of the Penal Code, a contrary intent must at least be inferred. This section provides that:

"Nothing contained in any provisions of this Code applies to any offense committed or other act done at any time before the day when this Code takes effect. Such an offense must be punished according to, and such act must be governed by the provisions of law existing when it was done or committed in the same manner as if this Code had not been passed."

If it be said that it relates to a method of procedure, then it must be read in connection with section 954 of the Code of Criminal Procedure (People v. Rugg, 98 N. Y. 537), which provides that no part of that Code "is retroactive unless expressly so declared." If I am right in the conclusion that this statute does not have a retroactive effect, then the relator was justified in refusing to answer the questions which were put to him.

For these reasons, I think the writ should be sustained, and the relator discharged.

LAUGHLIN, J. (dissenting). The authority of the Legislature, by granting full immunity from prosecution, to require a witness to testify, even to the commission of a crime by himself, where the facts concerning which the inquiry is made arise subsequent to the enactment of the law, is beyond question. The facts concerning which the relator refused to testify occurred prior to the enactment of the law granting immunity from prosecution. Assuming that it was competent for the Legislature to grant immunity from prosecution as to crimes previously committed, and to compel a witness to disclose facts that may show or tend to show that he committed a crime before the enactment of the statute granting such immunity—questions not free from doubt—we come to the question as to whether the statute granting immunity and requiring witnesses to testify indicates a legislative intent that it should apply to past as well as to future crimes. The general rule is that a statute relating to evidence or matters of procedure merely affects pending actions and proceedings, as well as those arising subsequently; but statutes affecting personal or property rights are given prospective effect only, unless the legislative intent to make them retroactive is clearly manifested. The enactment of statutes affecting vested rights and of ex post facto laws is forbidden. A person may do an act which all good citizens will agree deserves punishment, but, if the act was not forbidden by law at the time it was done, no statute can be thereafter legally enacted making it a punishable offense. Where the state adopts a new policy, ordinarily, at least, no attempt is made to apply a new rule to acts that transpired prior to the change in policy. The amendment to the

statute makes a radical change in the law. The district attorney or one of his assistants, without the sanction of the court, may, by asking a single question on a preliminary examination or before the grand jury, forever bar the prosecution of the witness, even for the most atrocious crimes.

The language employed does not indicate a legislative intent to grant immunity for crimes already committed, or that the amendment should apply to inquiries concerning crimes committed before its enactment. If we were to take judicial notice of the origin of this amendment and of the public hearings thereon before the committees of the Legislature, it might be inferred that the author of the amendment, and many legislators, intended that it should have a retroactive effect; but the language employed does not expressly so declare, nor does it necessarily indicate such intent, and it may well be that many members of both branches of the Legislature voted for the measure in the belief that it would be given effect prospectively only. The question presented to us is neither one of evidence nor of procedure. Undoubtedly, neither party to a civil action or criminal prosecution could require the exclusion of evidence, merely because, at the time of the transaction under consideration, such evidence would not be competent under the law as it then existed, but was rendered competent by subsequent statute. Here the objection is taken by the witness, who claims that, inasmuch as he could not have been required to answer these questions at the time to which the inquiries relate, it was not competent for the Legislature to thereafter enact a law granting him immunity and requiring him to disclose the facts, and that, even if competent, the act does not require and should not receive that construction. I am of opinion that the statute does not require a retroactive construction, and that its application should be limited to crimes committed after its enactment, and to inquiries concerning such crimes.

These views lead to the conclusion that the writ should be sustained, and the relator discharged.